STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, PUBLIC STAFF NORTH CAROLINA UTILITIES COMMISSION, AND CAROLINA POWER AND LIGHT COMPANY AND DUKE POWER COMPANY AS INTERVENORS v. EMPIRE POWER COMPANY, APPLICANT FOR CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY

No. 9210UC724

(Filed 19 October 1993)

1. **Utilities Commission § 51 (NCI3d)— independent power producer—certificate of public convenience and necessity denied—standard of review**

   Review of the Utilities Commission's decision to deny a certificate of public convenience and necessity (CPCN) to an independent power producer (IPP) is governed by N.C.G.S. § 62-94(b) (1989). The Court of Appeals will uphold a decision of the Commission unless it finds error based on one of the enumerated grounds in that statute.

   **Am Jur 2d, Public Utilities § 278.**

2. **Utilities Commission § 15 (NCI3d)— certification of public convenience and necessity—independent power producer—statutory authority**

   The Utilities Commission may resort to parts of Chapter 62 other than N.C.G.S. §§ 62-82 and 110.1 (the CPCN sections) for the processing of applications. Although petitioner, an independent power producer, argued that the Commission's dismissal of its application and its establishment of minimum filing requirements constituted an impermissible deviation from

STATE EX REL. UTILITIES COMM. v. EMPIRE POWER CO.

[112 N.C. App. 265 (1993)]

the process specifically provided in N.C.G.S. §§ 62-82 and 110.1, and that any deviation from these sections is beyond the Commission's authority and jurisdiction, N.C.G.S. §§ 62-110.1 and 62-82 do not provide the Commission with complete instructions for the process of awarding and denying certificates to applicants and the Commission may turn to the more general sections of Chapter 62, specifically, N.C.G.S. § 62-31 (1989) and N.C.G.S. § 62-60 (1989), for guidance in interpreting the process. In so doing, however, the Commission may not, and did not here, deviate from the process which is stated clearly and unambiguously in N.C.G.S. §§ 62-82 and 62-110.1.

**Am Jur 2d, Public Utilities § 264.**

3. **Utilities Commission § 3 (NCI3d) — certification of public convenience and necessity — independent power producer — establishment of minimum filing requirements — not an unconstitutional exercise of legislative powers**

The Utilities Commission's establishment of minimum filing requirements in a certificate of public convenience and necessity case involving an independent power producer did not constitute an unconstitutional exercise of legislative powers. The General Assembly set forth a specific standard for the Commission with regard to electric generating facilities, *i.e.*, whether public convenience and necessity requires the construction of the proposed facility, and this standard is read *in pari materia* with N.C.G.S. § 62-2, which contains ten specific policies. The standard of public convenience and necessity and the policies of the State are sufficient to guide the Commission in deciding a CPCN case and the legislature's delegation of this authority is not unconstitutional.

**Am Jur 2d, Public Utilities § 232.**

4. **Utilities Commission § 3 (NCI3d) — certification of public convenience and necessity — independent power producer — licensing of IPPs — reasonable relation to power supply**

Although an independent power producer contended that the Utilities Commission's deviation from the process prescribed by N.C.G.S. §§ 62-82 and 62-110.1 constituted an unconstitutional exercise of the police power of the State, and thus that the Commission should not be able to prevent petitioner from engaging in lawful business on its own land with private funds,

the licensing of independent power producers has a reasonable relation to the creation of a reliable and economical power supply and the avoidance of the costly overbuilding of generation resources. The regulating statute will not be strictly construed because the supply and sale of electricity to other utilities is not an ordinary trade or occupation.

**Am Jur 2d, Public Utilities § 232.**

5. **Utilities Commission § 5 (NCI3d) — certification of public convenience and necessity — independent power producer — process sufficiently clear**

Although an independent power producer contended that the certificate of public convenience and necessity process would be fraught with uncertainty if the Utilities Commission could find authority from sections other than N.C.G.S. §§ 62-82 and 62-110.1, N.C.G.S. § 62-82, when read in conjunction with other provisions of Chapter 62, is sufficiently clear to avoid that confusion.

**Am Jur 2d, Public Utilities § 264.**

6. **Utilities Commission § 15 (NCI3d) — certification of public convenience and necessity — independent power producer — statutory time limit for hearing — not jurisdictional**

The language in N.C.G.S. § 62-82 requiring automatic issuance of a certificate of public convenience and necessity by the Utilities Commission if the Commission had not ordered a hearing and had not received a complaint within ten days after the last publication of notice did not apply to petitioner, an independent power producer, because the Commission received complaints from Duke Power and CP&L. Although the Commission merely scheduled and did not commence a hearing within the three-month period required by N.C.G.S. § 62-82(a), that language is directory and not jurisdictional.

**Am Jur 2d, Public Utilities §§ 264, 266.**

7. **Utilities Commission § 3 (NCI3d) — certificate of public convenience and necessity — dismissal — hearing not required**

The Utilities Commission was not required by N.C.G.S. § 62-82(a) to hold a hearing before dismissing a certificate of public convenience and necessity application. Where N.C.G.S. § 62-82 is silent, the Commission may refer to the judicial

STATE ex rel. UTILITIES COMM. v. EMPIRE POWER CO.

[112 N.C. App. 265 (1993)]

powers of Chapter 62. The Commission's authority is described by N.C.G.S. § 62-60 as that of a court of general jurisdiction and the dismissal of the application here was, therefore, a proper exercise of its authority.

**Am Jur 2d, Public Utilities § 266.**

**8. Utilities Commission § 15 (NCI3d) — certificate of public convenience and necessity — dismissal — forecast of evidence on issue of need — inadequate**

The Utilities Commission did not err by dismissing an application for a certificate of public convenience and necessity by an independent power producer where the forecast of evidence on the issue of need was inadequate. Although the determination of public convenience and necessity is essentially a factual inquiry, summary judgment is appropriate when there is no genuine issue as to any material fact. Petitioner failed to raise a genuine issue of material fact as to whether public need required construction of this facility.

**Am Jur 2d, Public Utilities § 264.**

Appeal by petitioner from order entered 23 April 1992, by the North Carolina Utilities Commission. Heard in the Court of Appeals 28 May 1993.

Petitioner Empire Power Company (Empire) is an independent power producer (IPP). IPP's, relatively new entrants into the power generation business, supply power on a contract basis to public utilities and others for resale.

On 31 October 1991, Empire, pursuant to N.C. Gen. Stat. § 62-110.1(a) (1989), submitted an application for a certificate of public convenience and necessity (CPCN), to construct a 600 megawatt combustion turbine electric generating facility, to be called Rolling Hills, in Rockingham County. On 19 November 1991, pursuant to N.C. Gen. Stat. § 62-82(a) (1989), the North Carolina Utilities Commission (the Commission) issued an order requiring petitioner to publish four weeks of public notice in Rockingham County. The order also required petitioner to serve a copy of its application and the public notice on each of the utilities to which it planned to sell electricity. On 22 November 1991, petitioner filed a verification that on 21 November 1991, it had served copies of the application and public notice on Carolina Power & Light (CP&L),

STATE EX REL. UTILITIES COMM. v. EMPIRE POWER CO.

[112 N.C. App. 265 (1993)]

Duke Power Company (Duke), and North Carolina Power. In a subsequent filing on 8 January 1992, petitioner asserted that it did not seek to sell to North Carolina Power. On 22 and 29 November and 6 and 13 December 1991, petitioner published its public notice, and on 30 December 1991, filed an affidavit of publication with the Commission. CP&L and Duke filed complaints and petitions to intervene in the proceeding on 20 and 23 December 1991, respectively. CP&L filed a motion to dismiss on 17 January 1992, followed by petitioner's motion for summary judgment, filed 4 February 1992. On 5 February 1992, the Commission heard arguments on both the motion to dismiss and the motion for summary judgment. The Commission entered an order 23 April 1992, dismissing petitioner's application, and finding that the decision rendered petitioner's motion for summary judgment moot. From this order, petitioner appeals.

*Broughton, Wilkins, Webb & Jernigan, P.A., by William Woodward Webb and Sara M. Biggers, for petitioner-appellant.*

*Robert P. Gruber, Executive Director, by Gisele L. Rankin, Staff Attorney, for respondent-appellee, Public Staff—North Carolina Utilities Commission.*

*Len S. Anthony and Hunton & Williams, by Frank A. Schiller, for respondent-appellee, Carolina Power and Light Company.*

*Steve C. Griffith, Jr., William Larry Porter, Karol P. Mack, and Kennedy, Covington, Lobdell & Hickman, by Myles E. Standish, for respondent-appellee, Duke Power Company.*

McCRODDEN, Judge.

Petitioner's appeal, consisting of twelve assignments of error, requires our determination of three issues: (I) whether the Commission's dismissal of the petition for a CPCN exceeded the constitutional and legislative limits of the Commission's authority and jurisdiction over petitioner's application; (II) whether, once the Commission failed to order a hearing within ten days of publication, as required by N.C.G.S. § 62-82(a), the law required it to issue a CPCN to petitioner; and (III) whether the Commission had the authority, jurisdiction, and justification to dismiss petitioner's application. Within each of these general issues, petitioner presented additional questions which we will address in the order in which petitioner raised them.

STATE ex rel. UTILITIES COMM. v. EMPIRE POWER CO.

[112 N.C. App. 265 (1993)]

**[1]** We initially note that N.C. Gen. Stat. § 62-94(b) (1989) governs our review of the Commission's decision. That statute provides that an appellate court may reverse or modify a decision of the Commission if the decision prejudices substantial rights of petitioner, because the Commission's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions, or

(2) In excess of statutory authority or jurisdiction of the Commission, or

(3) Made upon unlawful proceedings, or

(4) Affected by other errors of law, or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

(6) Arbitrary or capricious.

N.C.G.S. § 62-94(b). This Court will uphold a decision of the Commission unless we find error based on one of the enumerated grounds of section 62-94(b). *State ex rel. Utilities Comm. v. Southern Bell*, 88 N.C. App. 153, 177, 363 S.E.2d 73, 87 (1987). The issues raised by petitioner relate to subsections (1) and (2), *i.e.*, whether the Commission's action violated constitutional provisions or was in excess of its statutory authority or jurisdiction.

I.

**[2]** We first determine the scope of the Commission's authority and jurisdiction pursuant to Chapter 62. Petitioner contends that the Commission's authority and jurisdiction in determining certification cases for IPPs are limited to that expressly granted in N.C.G.S. §§ 62-82 and 110.1 (the CPCN sections). We agree with petitioner that the Utilities Commission is a creature of the legislature and exercises only that authority conferred upon it by statute, *Utilities Com. v. Motor Lines*, 240 N.C. 166, 168, 81 S.E.2d 404, 406 (1954), but we do not agree with petitioner's narrow interpretation of the statute.

In its 23 April 1992 order, the Commission allowed CP&L's motion to dismiss on the ground that petitioner failed to show, as it must under section 62-110.1, that public convenience and necessity required construction of the Rolling Hills facility. Petitioner contends that the Commission's dismissal of its application and

IN THE COURT OF APPEALS                271

STATE ex rel. UTILITIES COMM. v. EMPIRE POWER CO.

[112 N.C. App. 265 (1993)]

its establishment of minimum filing requirements constituted an impermissible deviation from the process specifically provided in sections 62-82 and 110.1, and any deviation from these sections is beyond the Commission's authority and jurisdiction.

Section 62-110.1 concerns the Commission's role in receiving and acting upon CPCN applications, and states that "no public utility *or other person* shall begin the construction of any . . . facility for the generation of electricity *to be directly or indirectly used* for the furnishing of public utility service . . . without first obtaining from the Commission a certificate that public convenience and necessity requires, or will require, such construction." N.C.G.S. § 62-110.1(a) (emphasis added). Section 62-82 concerns the special procedure to be followed when reviewing a CPCN application. Specifically, section 62-82(a) provides that when a CPCN application is filed:

> [T]he Commission shall require the applicant to publish a notice thereof once a week for four successive weeks in a daily newspaper of general circulation in the county where such facility is proposed to be constructed and thereafter the Commission upon complaint shall, or upon its own initiative may, upon reasonable notice, enter upon a hearing to determine whether such certificate shall be awarded. Any such hearing must be commenced by the Commission not later than three months after the filing of such application . . . . If the Commission or panel does not, upon its own initiative, order a hearing and does not receive a complaint within 10 days after the last day of publication of the notice, the Commission or panel shall enter an order awarding the certificate.

N.C.G.S. § 62-82(a).

Petitioner maintains that the CPCN sections provide a sufficiently complete set of instructions, so that the Commission would not need to refer to other more general laws contained in Chapter 62. Petitioner cites *State ex rel. Utilities Comm. v. Edmisten*, 291 N.C. 451, 232 S.E.2d 184 (1977), in support of its argument that the general powers of the Commission, granted pursuant to the various sections of Chapter 62, cannot be inferred into statutes which are more specific in their application, *i.e.*, N.C.G.S. §§ 62-82 and 62-110.1. In *Edmisten*, the Supreme Court found that the language of N.C. Gen. Stat. § 62-134(e) was clear and unambiguous, and thus the Commission could not employ a more general statute,

272        IN THE COURT OF APPEALS

STATE ex rel. UTILITIES COMM. v. EMPIRE POWER CO.

[112 N.C. App. 265 (1993)]

N.C. Gen. Stat. § 62-3(24), to alter the meaning and thus nullify section 62-134(e). We find the instant case distinguishable from *Edmisten* since we determine, as illustrated in part II of this opinion, that sections 62-110.1 and 62-82 do not provide the Commission with complete instructions for the process of awarding and denying certificates to applicants. Therefore, the Commission may turn to the more general sections of Chapter 62, specifically, N.C. Gen. Stat. § 62-31 (1989) and N.C. Gen. Stat. § 62-60 (1989), for guidance in interpreting the process not addressed in sections 62-82 and 62-110.1. In so doing, however, the Commission may not, and we find it did not, deviate from the process which is stated clearly and unambiguously in sections 62-82 and 62-110.1: the Commission required petitioner to publish notice once a week for four weeks; the notice was last published on 13 December 1991, and the Commission received two complaints within ten days following the last day of publication of petitioner's notice.

Within Chapter 62, sections 62-31 and 62-60 confer rule-making and judicial powers upon the Commission. However, petitioner argues that the CPCN sections narrowly circumscribe the Commission's jurisdiction over it since it is not a "public utility," and therefore the Commission should be limited to only those procedures specifically stated in sections 62-82 and 62-110.1. Since neither section 62-82 nor section 62-110.1 specifically provides for the dismissal of CPCN applications or the establishment of minimum filing criteria, petitioner maintains that the Commission should be prevented from employing those procedures. Assuming *arguendo* that petitioner is not a public utility, we nevertheless determine that the Commission's exercise of its judicial powers in ruling upon CPCNs for non-utilities is not limited exclusively to sections 62-82 and 62-110.1. Nothing in section 62-82(a) suggests that the North Carolina legislature intended to limit the Commission's exercise of its section 62-31 and section 62-60 powers in such a way as to exclude CPCN applications.

Furthermore, we have already determined that, although the Commission may not deviate from the provisions expressly stated in sections 62-82 and 62-110.1, the Commission may rely upon other sections in Chapter 62 to interpret and implement the process. Any other interpretation of the statute would leave the Commission without procedure in instances in which the General Assembly did not anticipate all of the facts and circumstances arising in the Commission's review of an application. Because the CPCN sec-

tions do not contain complete instructions, they cannot be the sole source of the Commission's authority and jurisdiction over applications for certificates. For example, sections 62-82 and 62-110.1 contain no provisions concerning the Commission's authority to hear dispositive motions, motions on evidentiary matters, or motions related to discovery. We conclude that the Commission may resort to other parts of Chapter 62 for the processing of applications. This allows it to effectuate the purpose of the Chapter, which is to promote the policy of the State as set forth in N.C. Gen. Stat. § 62-2 (1989). *Utilities Comm. v. Edmisten*, 294 N.C. 598, 242 S.E.2d 862 (1978).

[3] Relying on these same assignments of error, petitioner also argues that the Commission's order dismissing petitioner's application was unconstitutional because it constituted an improper exercise of legislative powers. We agree with petitioner that the General Assembly cannot delegate to an administrative board the power to legislate. *Farlow v. Bd. of Chiropractic Examiners*, 76 N.C. App. 202, 211, 332 S.E.2d 696, 702, *disc. review denied*, 314 N.C. 664, 336 S.E.2d 621 (1985). We do not agree, however, that the Commission's establishment of minimum filing requirements constituted an unconstitutional exercise of legislative powers. In *Adams v. Dept. of N.E.R. and Everett v. Dept. of N.E.R.*, 295 N.C. 683, 249 S.E.2d 402 (1978), an instructive case for us, the Supreme Court addressed the legislature's delegation of authority to develop and adopt guidelines for the coastal areas of North Carolina to the Coastal Resources Commission. The Court stated:

> In the search for adequate guiding standards the primary sources of legislative guidance are declarations by the General Assembly of the legislative goals and policies which an agency is to apply when exercising its delegated powers. We have noted that such declarations need be only "as specific as the circumstances permit." When there is an obvious need for expertise in the achievement of legislative goals the General Assembly is not required to lay down a detailed agenda covering every conceivable problem which might arise in the implementation of the legislation. It is enough if general policies and standards have been articulated which are sufficient to provide direction to an administrative body possessing the expertise to adapt the legislative goals to varying circumstances.

*Id.* at 698, 249 S.E.2d at 411 (citation omitted).

STATE ex rel. UTILITIES COMM. v. EMPIRE POWER CO.

[112 N.C. App. 265 (1993)]

With regard to electric generating facilities, the General Assembly set forth a specific standard for the Commission, *i.e.*, whether public convenience and necessity requires the construction of the proposed facility. We read this standard *in pari materia* with N.C.G.S. § 62-2 which contains ten specific policies, among which are promoting the inherent advantages of regulated public utilities and adequate, reliable, and economic utility service, including the entire spectrum of demand side option as resources necessary to meet future growth, and fostering continued service of public utilities on a well-planned and coordinated basis. We believe that the standard of public convenience and necessity and the policies of the State are sufficient to guide the Commission in deciding a CPCN case and that the legislature's delegation of this authority is not unconstitutional.

[4]   Petitioner next contends that the Commission's deviation from the process prescribed by sections 62-82 and 62-110.1 constituted an unconstitutional exercise of the police power of the State, and thus the Commission should not be able to prevent petitioner from engaging in lawful business, on its own land, with private funds. The cases cited by petitioner are distinguishable from the instant case, and we therefore find this argument meritless. *State v. Harris*, 216 N.C. 746, 6 S.E.2d 854 (1940), cited by petitioner, involved the licensing of individuals in the dry cleaning business. The Supreme Court distinguished between industries requiring scientific or technical knowledge and skill and those which are "ordinary trades and occupations, harmless in themselves, in many of which men have engaged immemorially as a matter of common right . . . ." *Id.* at 756, 6 S.E.2d at 861. The Court found that the dry cleaning business fit in the latter category, and thus strictly reviewed the statute. The Court stated that an exercise of police power may be valid if the proposed restriction has a reasonable relation to the evil it purports to remedy. *Id.* at 759-60, 6 S.E.2d at 863.

The facts in the instant case show that petitioner does not intend to engage in the type of "ordinary trade or occupation" referred to in *Harris*, such as the Court considered the dry cleaning business to be in 1940. Because the supply and sale of electricity to other utilities is not an ordinary trade or occupation, we will not strictly construe the statute. We find that the licensing of IPPs has a reasonable relation to the creation of a reliable and economical power supply and the avoidance of the costly over-

building of generation resources. *See State ex rel. Utilities Comm. v. Eddleman*, 320 N.C. 344, 358 S.E.2d 339 (1987).

Petitioner also cites *In re Hospital*, 282 N.C. 542, 193 S.E.2d 729 (1973), in which the Supreme Court overturned N.C. Gen. Stat. § 90-291, which required a certificate of public convenience and necessity before beginning construction of a hospital, finding that the General Assembly had not established a reasonable relationship between the regulation of private facilities for medical care and the public health. After that opinion, however, the legislature repealed the statute on which the case was based and enacted N.C. Gen. Stat. §§ 131E-175 to -190 (1992), which requires certificates of need in the development of new institutional health services and which rendered moot the holding of *In re Hospital*. Moreover, even if the case were not moot, the Supreme Court distinguished the public utility business from the medical industry, stating:

> In the public utility businesses competition, deemed unnecessary, is curtailed by the requirement that one desiring to engage in such business procure from the Utilities Commission a certificate of public convenience and necessity. However, in those fields the State has undertaken to protect the public from the customary consequences of monopoly by making the rates and services of the certificate holder subject to regulation and control by the Utilities Commission. No comparable power to regulate hospital rates and services has been given to the Medical Care Commission.

*Id.* at 550, 193 S.E.2d at 734-35 (citations omitted). Indeed, one of the purposes of Chapter 62 is to "promote the inherent advantages of regulated public utilities." N.C.G.S. § 62-2(2). Although we need not reach the question of whether petitioner is a public utility, we find that the statute indicates that there is a substantial public purpose in the licensing of power generating facilities such as that proposed by petitioner.

[5] Finally, we summarily dismiss petitioner's argument that, if the Commission may find authority from sections other than 62-82 and 62-110.1, the entire CPCN process would be fraught with uncertainty. We find section 62-82, when read in conjunction with other provisions of Chapter 62, sufficiently clear to avoid the confusion suggested by petitioner.

STATE ex rel. UTILITIES COMM. v. EMPIRE POWER CO.

[112 N.C. App. 265 (1993)]

## II.

[6]  In petitioner's next assignment of error, it contends that section 62-82 presents a jurisdictional time limit, during which the Commission must order a hearing in order to maintain jurisdiction over the CPCN process. We do not agree with petitioner's analysis of section 62-82 that, if the Commission does not order a hearing, it must award a certificate within ten days of the last day of the publication of the notice. Section 62-82(a) provides, "[i]f the Commission or panel does not, upon its own initiative, order a hearing *and* does not receive a complaint within 10 days after the last day of publication of the notice, the Commission or panel shall enter an order awarding the certificate." (Emphasis added). We find it unnecessary to determine whether the phrase *within ten days of the last day of the publication* applies only to the period of time within which the Commission must receive a complaint, as suggested by the doctrine of the last antecedent, *HCA Crossroads Residential Ctrs. v. N.C. Dept. of Human Res.*, 327 N.C. 573, 578, 398 S.E.2d 466, 469 (1990), because it is clear that the Commission's receipt of Duke's and CP&L's complaints to petitioner's application defeated the automatic issuance of the certificate.

Petitioner also argues that the Commission failed to commence a hearing within three months after the filing of the CPCN application, and therefore, the Commission is without jurisdiction to act in any manner other than to award a certificate to petitioner. We agree that the Commission failed to commence a hearing within the three-month period, as required by section 62-82(a). Section 62-82(a) requires that "[the] hearing must be commenced by the Commission *not later than three months after filing of such application.*" (Emphasis added). Since petitioner filed its application on 31 October 1991, the three-month time period for commencing a hearing began to run from this date. On 22 January 1992, the Commission scheduled oral argument on CP&L's motion to dismiss for 5 February 1992.

Black's Law Dictionary defines the word "commence" as "to initiate by performing the first act" or "to institute or start." *Black's Law Dictionary*, 6th Edition 268 (1990). We find unpersuasive the Commission's argument that the order of 22 January 1992, scheduling oral argument to be held on 5 February 1992 which is outside the three-month time period, constituted a commencement of the hearing. If we were to find that the mere scheduling of a hearing

constituted a commencement, the Commission could schedule a hearing in the indefinite future, which is clearly not the intent of the statute. The General Assembly intended that the determination whether to award a CPCN certificate be an expedient procedure; section 62-82 provides that the procedure for "rendering decisions" during the hearing of a CPCN application shall take precedence over all other matters on the Commission's calendar, except for rate cases conducted pursuant to N.C. Gen. Stat. § 62-81 (1989).

Since the Commission failed to commence a hearing within three months, petitioner maintains the Commission was left with jurisdiction only to grant a certificate to petitioner. We disagree. Whether the time provisions of section 62-82(a) are jurisdictional in nature depends upon whether the legislature intended the language to be mandatory or directory. *Art Society v. Bridges*, 235 N.C. 125, 130, 69 S.E.2d 1, 5 (1952). Many courts have observed that statutory time periods are generally considered to be directory rather than mandatory unless the legislature expresses a consequence for failure to comply within the time period. *See Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 883 (5th Cir. 1992); *Thomas v. Barry*, 729 F.2d 1469, 1470 n. 5 (D.C. Cir. 1984). If the provisions are mandatory, they are jurisdictional; if directory, they are not.

Section 62-82 clearly specifies that one provision is mandatory, and that is the one that *requires* that a certificate be issued if the Commission does not order a hearing at all and there is no complaint filed within ten days of the last date of publication. However, the statute is silent as to the consequences, if any, which would result from the Commission's failure to commence a hearing within the three-month time period. When the General Assembly, in the same statute, expressly provides for the automatic issuance of a certificate under different circumstances (the Commission does not order a hearing and no complaint is filed), the only logical conclusion is that the General Assembly only intended for an automatic issuance to occur in that specific situation. *Cf. Campbell v. Church*, 298 N.C. 476, 482, 259 S.E.2d 558, 563 (1979) (an exchange of real property between a redevelopment commission and a church must comply with the advertisement and bid requirements of N.C. Gen. Stat. § 160A-514(d), since the statute contained certain instances, of which an exchange was not included, where advertisement and bids are not required).

Petitioner relies upon *HCA Crossroads*, which held that an agency's failure to act on a certificate of need within the time period provided by N.C. Gen. Stat. § 131E-185 divested the agency of jurisdiction to take any action other than issuing the certificate. *HCA Crossroads* is inapplicable to the case at hand because the Court addressed a statute (N.C.G.S. § 131E-185) which contains specific language stating that the "Department shall issue . . . a certificate of need with or without conditions *or reject the application within the review period." HCA Crossroads*, 327 N.C. at 577, 398 S.E.2d at 469 (emphasis added); N.C.G.S. § 131E-185(b). The absence of any such explicit language in section 62-82(a) distinguishes this case from *HCA Crossroads*.

The Commission's automatic issuance of a certificate, when complaints and motions to intervene have been filed in the matter and a sufficient showing of public need has not been made, would be contrary to the purpose of section 62-110.1(a). The primary purpose of the statute is to provide for the orderly expansion of the State's electric generating capacity in order to create the most reliable and economical power supply possible and to avoid the costly overbuilding of generation resources. *Eddleman*, 320 N.C. at 362, 358 S.E.2d at 351. In order to give effect to this purpose, we find the language in section 62-82 to be directory and, thus, not jurisdictional.

## III.

[7]   We likewise reject petitioner's final set of arguments further questioning the authority, jurisdiction, and justification of the Commission's action. The first of these arguments is that section 62-82(a) requires the Commission to hold a hearing before it can dismiss a CPCN application. Petitioner bases its interpretation upon its earlier argument that the Commission's powers over CPCN applications are limited to those enumerated in sections 62-82 and 62-110.1. As previously stated, however, where section 62-82 is silent, the Commission may refer to the judicial powers of Chapter 62 to supplement its procedure for awarding or denying certificates. Section 62-60 describes the Commission's authority as that of a court of general jurisdiction in which it "shall render its decision upon questions of law and fact in the same manner of a court of record." The Commission's dismissal of the application was, therefore, a proper exercise of its authority. We also note that, although petitioner initially opposed CP&L's motion to dismiss on the basis

STATE EX REL. UTILITIES COMM. v. EMPIRE POWER CO.

[112 N.C. App. 265 (1993)]

that section 62-80 did not authorize it, it later filed a motion for summary judgment, arguably abandoning its position concerning the authority of the Commission.

[8] We also do not agree with petitioner's argument that the Commission erred in dismissing its application because, according to petitioner, it had established the need for its proposed facility in its application. Before awarding a certificate, the Commission must comply with section 62-110.1 which requires a showing of public convenience and *necessity* by the applicant. Subsection (d) mandates the Commission's consideration of the "applicant's arrangement with other electric utilities for interchange of power, pooling of plant, purchase of power and other methods for providing reliable, efficient and economical electric service." Petitioner's application stated that it had an outstanding proposal to sell long-term wholesale peaking capacity and energy to Duke for delivery beginning as early as 1994. Duke, however, had refused this proposal. Additionally, the application, citing dated testimony from previous Commission hearings, generally asserted that there was a need for its proposed facility across the state as well as within the Duke service territory. We find that this forecast of evidence on the issue of need was inadequate and that the Commission's dismissal was proper.

Petitioner argues that the Commission's dismissal of its application was similar to granting summary judgment and was in error, because the issue of public convenience and necessity was a genuine issue of material fact. Although the determination of public convenience and necessity is essentially a factual inquiry, summary judgment is appropriate when there is no genuine issue as to any material fact. N.C. Gen. Stat. § 1A-1, Rule 56(a) (1990). The Commission based its order dismissing petitioner's application upon the following facts: petitioner is an IPP and, as such, proposed to construct a 600 megawatt electric generating facility in Rockingham County; it based public need for this facility upon the allegation that Duke and/or CP&L needed such a facility; neither Duke, CP&L, nor any other public utility, however, had committed to purchase the output of petitioner's proposed facility; and in fact both Duke and CP&L objected to petitioner's application. Petitioner failed to raise any genuine dispute concerning these facts.

The Utilities Commission is required to regulate the expansion of electric utility plants in North Carolina and, before issuing a

CPCN, must establish a public need for a proposed generating facility. *In re Duke Power Co.*, 37 N.C. App. 138, 245 S.E.2d 787, *disc. review denied*, 295 N.C. 646, 248 S.E.2d 257 (1978). Petitioner failed to raise a genuine issue of material fact that public need required construction of the Rolling Hills facility, and the Commission's dismissal of its application was appropriate. The Commission's decision was without prejudice to. petitioner's right to file another application at some future date.

In finding that there was no genuine issue of material fact as to the public need for the Rolling Hills facility, we have no need, and we decline, to address petitioner's. question of whether the Commission appropriately linked the need for petitioner's power to a requirement, first stated in the Commission's order, that petitioner have a contract to sell such power.

For the foregoing reasons, we affirm the Commission's dismissal of petitioner's application for a certificate of public convenience and necessity.

Affirmed.

Judges WELLS and JOHN concur.