**N.C. STATE BD. OF EDUC. v. N.C. LEARNS, INC.**

[231 N.C. App. 270 (2013)]

NORTH CAROLINA STATE BOARD OF EDUCATION, Petitioner, and NORTH
CAROLINA SCHOOL BOARDS ASSOCIATION, et al., Intervenors
v.
NORTH CAROLINA LEARNS, INC., d/b/a NORTH CAROLINA
VIRTUAL ACADEMY, Respondent

No. COA13-179

Filed 3 December 2013

1. **Schools and Education—State Board of Education—completion of virtual learning study—not ban on virtual charter school applications**

    The State Board of Education (SBOE) did not institute an illegal moratorium on virtual charter schools. The SBOE's actions did not constitute a shift in policy to ban virtual charter school applications permanently but rather reflected a general policy of the SBOE to not proceed with evaluating applications for virtual charter schools until the e-Learning Commission had concluded its study on the matter.

2. **Schools and Education—State Board of Education—virtual charter school application—jurisdiction not waived**

    The State Board of Education (SBOE) was not required to act on respondent's virtual charter school application before its 15 March deadline. The applicable statutes were directory rather than mandatory, and therefore, the SBOE did not waive its jurisdiction by failing to respond to respondent's application by 15 March.

3. **Parties—intervention—aggrieved parties**

    The trial court did not err in a case involving a virtual charter school application by allowing the intervention of persons who were not parties aggrieved where the ruling of the administrative law judge had a direct impact on the intervenors.

4. **Schools and Education—State Board of Elections—no duty to act—no contested case—no authority for hearing in Office of Administrative Hearings**

    The Office of Administrative Hearings was not the appropriate forum for hearing respondent's claim involving a virtual charter school application. Where an agency, such as the State Board of Elections in this case, has not acted and is under no direction to act, there exists no contested case and no authority for a hearing in the Office of Administrative Hearings.

**5.  Pleadings—amendment to record—preservation of record—
no prejudice**

The trial court did not err in a case involving an application for
a virtual charter school by allowing an amendment to the record
to include respondent's virtual charter school application. The trial
court noted that the application was admitted into evidence in order
to preserve a complete record of all relevant evidence for purposes
of appeal, pursuant to N.C.G.S. § 150B-47. Furthermore, the admis-
sion of this evidence was not prejudicial.

Appeal by respondent from order entered 29 June 2012 by Judge
Abraham Penn Jones in Wake County Superior Court. Heard in the
Court of Appeals 14 August 2013.

*Attorney General Roy Cooper, by Assistant Attorneys General
Laura E. Crumpler and Tiffany Y. Lucas, for State Board of
Education.*

*Tharrington Smith, L.L.P, by Deborah R. Stagner; and Poyner
Spruill, LLP, by Edwin M. Speas, Jr., and Robert F. Orr, for
intervenors-appellees.*

*Hartsell & Williams, P.A., by Christy E. Wilhelm and Fletcher L.
Hartsell, Jr., for respondent-appellant.*

*North Carolina Justice Center, North Carolina Rural Education
Working Group, and Parents Supporting Parents, by Christine
Bischoff and Carlene McNulty; Advocates for Children's Services
of Legal Aid of North Carolina, by Lewis Pitts; Children's Law
Clinic at Duke Law School, by Jane Wettach; North Carolina
Association of Educators, by Ann McColl; Southern Coalition for
Social Justice, by Anita S. Earls; UNC Center for Civil Rights, by
Mark Dorosin; and UNC Center on Poverty, Work and Opportunity,
by Mary Irvine, for amici curiae.*

BRYANT, Judge.

The orders of the trial court finding: (I) that petitioner was not
required to act on respondent's virtual charter school application before
the March 15 deadline; (II) that the Office of Administrative Hearings
was not the appropriate forum for hearing respondent's claim; and
(III) that the State Board of Education, not the Office of Administrative

Hearings, has sole authority to grant or deny respondent's application to operate a virtual charter school, are affirmed. Because the trial court did not err in allowing the (IV) intervention of parties and (V) amendment of the record, we affirm.

In 1996, the North Carolina General Assembly adopted the Charter School Law, N.C. Gen. Stat. § 115C-238.29A (2011), governing the process for establishing and overseeing charter schools. Authority for the handling of charter schools was vested in the State Board of Education ("SBOE"). Pursuant to N.C. Gen. Stat. § 115C-238.29B, a local school board may give preliminary approval to an application for a charter school but final approval of said application must be given by the SBOE.

At the 6 October 2011 monthly meeting of the SBOE, Chairman Harrison announced that no applications for virtual charter schools would be considered for the 2012—2013 school year "because the e-Learning Commission [was] examining all aspects of virtual education in North Carolina (pre-K—16) . . . ."

On 1 November 2011, respondent North Carolina Learns, Inc., doing business as North Carolina Virtual Academy ("NCVA"), submitted a "fast track" application for preliminary approval of a virtual charter school to the Cabarrus County Board of Education. The Cabarrus County Board of Education reviewed the application and granted preliminary approval on 23 January 2012 to respondent for the creation of a virtual charter school. On 13 February 2012, NCVA forwarded the application to the SBOE; the SBOE received the application on 14 February 2012. Although the SBOE had a 15 March deadline to accept NCVA's application pursuant to N.C. Gen. Stat. § 115-238.29D(a), the SBOE took no action on NCVA's application because of its earlier decision not to review applications for virtual charter schools for the 2012—2013 school year.

On 21 March 2012, NCVA filed a petition for a contested case hearing with the Office of Administrative Hearings, citing the SBOE's failure to respond to NCVA's application by the 15 March deadline. Thereafter, NCVA amended its pleadings. The SBOE answered by filing a motion to dismiss, followed by a motion for summary judgment. NCVA then filed a cross-motion for summary judgment.

A hearing was conducted on 8 May 2012 in the Office of Administrative Hearings, and on 18 May 2012 the administrative law judge (or "ALJ") issued a decision granting summary judgment to NCVA. The administrative law judge found that the SBOE failed to act in a timely manner upon NCVA's application and had therefore lost jurisdiction over final approval or any other action related to the application.

The administrative law judge held that NCVA's application for a virtual charter school was deemed approved as a matter of law.

On 23 May 2012, the SBOE filed a petition for judicial review in Wake County Superior Court. On 15 June 2012, the North Carolina School Boards Association and 89 local boards of education ("intervenors") then sought to intervene in the matter as parties aggrieved.

On 25 June 2012, the matter was heard in Wake County Superior Court, the Honorable Abraham Penn Jones presiding. On 29 June 2012, the trial court granted the motion allowing the intervenors to join the lawsuit and reversed the decision of the administrative law judge.

NCVA appeals.

---

On appeal, NCVA argues that: (I) the SBOE instituted an illegal moratorium on virtual charter schools that did not relieve the SBOE of its legal duties; (II) the SBOE was required to act before the 15 March deadline and thus lost its ability to act by failing to meet the deadline; (III) the trial court erred in allowing the intervention of persons who were not parties aggrieved; (IV) the Office of Administrative Hearings was the appropriate forum for hearing NCVA's claim; and (V) the trial court allowed the amendment of the record in contravention of the law.

*I.*

**[1]** NCVA argues that the SBOE instituted an illegal moratorium on virtual charter schools that did not relieve it of its legal duties. We disagree.

A *de novo* standard of review is appropriate when reviewing decisions by a trial court based upon judicial review of an administrative agency decision. *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 659, 599 S.E.2d 888, 895 (2004).

NCVA first argues that the SBOE, in declaring a moratorium on virtual charter schools during its 6 October 2011 meeting, violated Robert's Rules of Order. The minutes of the 6 October 2011 public meeting recorded SBOE Chairman Harrison's comments as follows:

> Chairman Harrison announced that the newly formed NC Public Charter School Advisory Council will convene for the first time on October 19. The purpose of this meeting is to begin reviewing the 'fast-track' charter applications in November. He explained that the 'fast-track' process is being targeted to charter schools that were considered

last year and for conversion schools. Other schools that might be ready to open their doors are welcome to apply, but it is probably more appropriate for these to apply in February (for a FY 2013-14 opening). Further, he explained that *because the e-Learning Commission is examining all aspects of virtual education in North Carolina (pre-.K-16), the [SBOE] will not be considering any virtual applications in the 'fast track' pool.*

NCVA contends that this announcement by Chairman Harrison is not authoritative because the SBOE has not demonstrated that it has adopted the latest edition of Robert's Rules of Order for conducting business. NCVA's argument on these grounds is without merit. North Carolina General Statutes, section 115C-12 states that "[t]he general supervision and administration of the free public school system shall be vested in the [SBOE]. The [SBOE] shall establish policy for the system of . . . public schools, subject to laws enacted by the General Assembly." N.C.G.S. § 115C-12 (2011); *see also* N.C. Const. art. IX, §§ 4, 5 ("The [SBOE] shall supervise and administer the . . . public school system and the educational funds provided for its support . . . and shall make all needed rules and regulations in relation thereto, subject to laws enacted by the General Assembly.").

Under section 115C-238.29B, the SBOE is vested with sole authority regarding charter schools in North Carolina, including all decisions regarding the formation and operation of such schools. *See* N.C.G.S. § 115C-238.29B(c)(3) (2011) ("Regardless of which chartering entity receives the application for preliminary approval, the [SBOE] shall have final approval of the charter school."); *see also* N.C.G.S. § 115C-238.29A, Editor's Note ("Session Laws 2011-164, s. 6, provides: 'The [SBOE] shall submit a preliminary report and a final report to the General Assembly on the implementation of this act, including (i) the creation, composition, and function of an advisory committee; (ii) the charter school application process; (iii) a profile of applicants and the basis for acceptance or rejection; and (iv) resources required at the State level for implementation of the charter school laws in Part 6A of Article 16 of Chapter 115C of the North Carolina General Statutes. The preliminary report shall be submitted by May 10, 2012, and the final report shall be submitted by June 11, 2012.' ").[1]

The rules regarding meetings and other actions by the SBOE are governed by Robert's Rules of Order: "Robert's Rules of Order (latest

---

1. Session law 2011-164 became effective on 1 July 2011.

edition) shall constitute the rules of parliamentary procedure applicable to all meetings of the Board and its committees." N.C. STATE BD. OF EDUC., POLICY MANUAL, POLICY OUTLINING STATE BD. OF EDUC. RULES OF PROCEDURE, TCS-C-006, Rule 1.1 (2005).

NCVA also claims that the SBOE's announcement on virtual charter schools was invalid due to a violation of Robert's Rules of Order requiring a motion and a vote. We disagree, as Chairman Harrison and the SBOE have the legal obligation to decide the application and approval process for charter schools. *See* N.C.G.S. §§ 115C-238.29A, 29B. The comments made by Chairman Harrison constituted a general announcement of already decided-upon policy, rather than a shift in policy as NCVA asserts.

Chairman Harrison clearly began his announcement by stating that the SBOE's decision not to review applications for virtual charter schools was based on deference to the e-Learning Commission which was then studying the issue of virtual charter schools and developing standards for the SBOE to use in their review and assessment of virtual charter school applications.[2] Accordingly, the comments made by Chairman Harrison reflected a general policy of the SBOE to not proceed with evaluating applications for virtual charter schools until the e-Learning Commission had concluded its study on the matter. Therefore, we reject NCVA's contention that the SBOE's actions constituted a shift in policy to ban virtual charter school applications permanently. NCVA's argument is overruled.

## II.

[2] NCVA next argues that the SBOE was required to act before the 15 March deadline and thus, lost its ability to act by failing to meet the deadline. We disagree. Based on our analysis in Issue I, it is clear that the SBOE had no duty to review or otherwise further act on NCVA's virtual charter school application[3] Nevertheless, we address NCVA's argument.

---

2. The e-Learning Commission was created by the SBOE and the Business Education Technology Alliance to assist the SBOE and other groups in developing standards and infrastructure for virtual learning opportunities, and to assist the SBOE in developing a virtual high school. *See State E-Learning Commission formed to Develop Virtual High School and Other Learning Opportunities*, N.C. DEP'T. OF PUB. INSTRUCTION (Apr. 12, 2005), http://www.ncpublicschools.org/newsroom/news/2004-05/20050412.

3. We note for the record that the e-Learning Commission was in the process of analyzing substantial concerns regarding virtual schools including, but not limited to, academic quality and effectiveness and quality of teaching and delivery of instruction, as well as sources of funding. These concerns had not been resolved at the time NCVA submitted its application in 2011—2012; the SBOE addressed these concerns with TCS-U-015, adopted

North Carolina General Statutes, section 115C-238.29D(a) provides that:

> The [SBOE] may grant final approval of an application if it finds that the application meets the requirements set out in this Part or adopted by the [SBOE] and that granting the application would achieve one or more of the purposes set out in G.S. 115C-238.29A. The [SBOE] shall act by March 15 of a calendar year on all applications and appeals it receives prior to February 15 of that calendar year.

N.C.G.S. § 115C-238.29D(a) (2011).

In addition, section 115C-238.29I(e) provides that:

> Notwithstanding the dates set forth in this Part, the [SBOE] may establish an alternative time line for the submission of applications, preliminary approvals, criminal record checks, appeals, and final approvals so long as the [SBOE] grants final approval by March 15 of each calendar year.

N.C.G.S. § 115C-238.29I(e) (2011).

In the order appealed, the trial court found that the administrative law judge erroneously relied on *HCA Crossroads Residential Ctrs., Inc. v. N.C. Dep't of Human Res.*, 327 N.C. 573, 398 S.E.2d 466 (1990), in reaching the conclusion that the SBOE waived jurisdiction by failing to respond to NCVA's application in a timely manner by its 15 March deadline, and thus, NCVA was entitled to a charter by operation of law.

In *HCA Crossroads*, the statute in question mandated a 90-day time limit for review of applications for certificates of need and allowed an additional 60-day extension which resulted in a mandatory maximum time limit of 150 days within which the applications were required to be reviewed. *See* N.C. Gen. Stat. §§ 131E-185(a)(1), (c). Another section of that statute required that a certificate of need be issued or rejected within the review period. *See id.* § 131E-185(b). In reviewing the statute, our Supreme Court found that a state agency waived its jurisdiction by not acting within the review period expressly stated in the applicable statute:

---

10 January 2013. *See* TCS-U-015, *Policy on the establishment of virtual charter schools in North Carolina*, N.C. STATE BD. OF EDUC., POLICY MANUAL, POLICY ON THE ESTABLISHMENT OF VIRTUAL CHARTER SCHOOLS IN N.C., TCS-U-015 (Jan. 10, 2013), *available at* http://sbepolicy.dpi.state.nc.us/policies/TCS-U-015.asp?pri=04&cat=U&pol=015&acr=TCS.

The limiting phrase 'within the review period' modifies only the phrase 'rejects the application,' and, therefore, the Department loses subject matter jurisdiction to reject an application when the review period ends. Once the review period expires without action by the Department, it retains jurisdiction only for the purpose of issuing certificates of need.

*HCA Crossroads*, 327 N.C. at 577, 398 S.E.2d at 469.

This Court has interpreted the holding of *HCA Crossroads* to apply to statutes which contain specific language requiring express action to be taken during a statutory review period. In contrast, where a statute lacks specific language requiring an agency to take express action during a statutory review period, our Court has held that such statutory language is merely directory, rather than mandatory. *See State v. Empire Power Co.*, 112 N.C. App. 265, 435 S.E.2d 553 (1993).

In *Empire Power*, the petitioner argued that the Utilities Commission's failure to hold a hearing within a statutory three month period of review constituted a waiver of jurisdiction. This Court disagreed, holding that

[w]hether the time provisions [of section 62-82(a)] are jurisdictional in nature depends upon whether the legislature intended the language to be mandatory or directory. Many courts have observed that statutory time periods are generally considered to be directory rather than mandatory unless the legislature expresses a consequence for failure to comply within the time period. If the provisions are mandatory, they are jurisdictional; if directory, they are not.

[Section 62-82] clearly specifies that one provision is mandatory, and that is the one that *requires* that a certificate be issued if the Commission does not order a hearing at all and there is no complaint filed within ten days of the last date of publication. However, the statute is silent as to the consequences, if any, which would result from the Commission's failure to commence a hearing within the three-month time period. When the General Assembly, in the same statute, expressly provides for the automatic issuance of a certificate under different circumstances (the Commission does not order a hearing

and no complaint is filed), the only logical conclusion is that the General Assembly only intended for an automatic issuance to occur in that specific situation.

*Id.* at 277, 435 S.E.2d at 559—60 (citations omitted). This Court, "find[ing] the language in [the statute] to be directory and, thus, not jurisdictional," concluded that:

> *HCA Crossroads* is inapplicable to the case at hand because the Court addressed a statute (N.C.G.S. § 131E-185) which contains specific language stating that the 'Department shall issue . . . a certificate of need with or without conditions *or reject the application within the review period.* The absence of any such explicit language in [section 62-82(a)] distinguishes this case from *HCA Crossroads.*

*Id.* at 278, 435 S.E.2d at 560 (citations omitted).

NCVA contends the trial court erred in reversing the decision of the administrative law judge because *HCA Crossroads* was controlling as to the interpretation of the SBOE's applicable statutes. However, neither §§ 115C-238.29D(a) nor 29I(e) expressly state that the SBOE will face consequences or waive its jurisdiction if an application is not approved by 15 March. Rather, these statutes in light of *Empire Power* provide for discretionary periods of review which only require that the SBOE issue its final approval of an application by 15 March. As in *Empire Power,* these statutes contain a provision that requires final approval by 15 March if the application indeed meets the requirements. However, unlike in *HCA Crossroads,* these statutes contain no specific language regarding the consequences of a failure to act. *See Comm'r of Labor v. House of Raeford Farms,* 124 N.C. App. 349, 477 S.E.2d 230 (1996) (distinguishing *HCA Crossroads* as applicable only to statutes which specify consequences for an agency's failure to act and thus are mandatory, from *Empire Power* as applicable to statutes which do not specify consequences for an agency's failure to act and thus are merely directory). Accordingly, we hold that the applicable statutes are directory rather than mandatory, and therefore, the SBOE did not waive its jurisdiction by failing to respond to NCVA's application by 15 March.[4]

---

4. We note that a better practice would have been for the SBOE to acknowledge receipt of the application by NCVA for a virtual charter school and explain that such applications were not yet being reviewed by the SBOE. However, we further note that, under these facts, the SBOE was under no statutory obligation to do so.

*III.*

**[3]** NCVA's third argument on appeal is that the trial court erred in allowing the intervention of persons who were not parties aggrieved. We disagree.

> An appellate court reviewing a superior court order regarding an agency decision 'examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' When, as here, 'a petitioner contends the [agency's] decision was based on an error of law, de novo review is proper.'

*Holly Ridge Assocs., LLC, v. N.C. Dep't of Env't & Natural Res.*, 361 N.C. 531, 535, 648 S.E.2d 830, 834 (2007).

Intervening parties are governed by N.C. Gen. Stat. § 150B-46 (2011), which states that "[a]ny person aggrieved may petition to become a party by filing a motion to intervene as provided in G.S. 1A-1, Rule 24." An aggrieved party is defined as "any person or group of persons of common interest directly or indirectly affected substantially in his or its person, property, or employment by an administrative decision." N.C. Gen. Stat. § 150B-2(6) (2011). " 'Person' means any natural person, partnership, corporation, body politic and any unincorporated association, organization, or society which may sue or be sued under a common name." *Id.* § 150B-2(7). "[W]hether a party is a 'person aggrieved' must be determined based on the circumstances of each individual case." *Empire Power*, 337 N.C. at 588, 447 S.E.2d at 779.

NCVA argues that the intervenors are not aggrieved parties per N.C.G.S. § 150B-46 et al. NCVA further cites *Diggs v. N.C. Dep't of Health & Human Servs.*, 157 N.C. App. 344, 578 S.E.2d 666 (2003), as holding that the intervenors are not aggrieved because they have presented only speculative harms regarding potential losses in funding.

In *Diggs*, the petitioner sought a declaratory judgment based solely upon possible future payments made to adult caretakers. Our Court held that the petitioner could not be aggrieved where her claimed harm was not imminently threatened or likely to occur. *Id.* at 348, 578 S.E.2d at 668-69. *Diggs* can be distinguished from the instant case because here the intervenors share a common, immediate interest with the SBOE which has been affected substantially by the ruling of the administrative

law judge. NCVA's charter application projected receiving $6,753.00 per student from state and local school funds, with an estimated $1,854.00 per student coming from local funds. As such, the intervenors are faced with an imminent economic injury via loss of school funding based on the ruling of the administrative law judge.

The administrative law judge's decision could further have a significant impact on all school boards across the state, thus creating a present and substantial matter of concern for both the SBOE and the intervenors regarding issues of management, oversight, and regulation as well.[5] As the trial court considered these matters in its decision to

---

5. On 10 January 2013, the SBOE approved TCS-U-015, *Policy on the establishment of virtual charter schools in North Carolina.* N.C. STATE BD. OF EDUC., POLICY MANUAL, POLICY ON THE ESTABLISHMENT OF VIRTUAL CHARTER SCHOOLS IN N.C., TCS-U-015 (Jan. 10, 2013), available at http://sbepolicy.dpi.state.nc.us/policies/TCS-U-015.asp?pri=04&cat=U&pol=015&acr=T CS. This policy addresses several of the reasons cited by intervenors as aggrieving factors in the present matter. As policy TCS-U-015 was not in effect at the time of this appeal, it is presented here only to show the SBOE's policy decisions reached in the wake of the e-Learning commission's findings on virtual charter schools.

> A virtual charter school is defined as a nonsectarian and nondiscriminatory public charter school open to all eligible North Carolina students who are enrolled full-time at the virtual charter school. Students enrolled at a virtual charter school receive their education predominantly through the utilization of online instructional methods. For purposes of initial operation in North Carolina, virtual charter schools may only serve grades 6 through 12.
>
> 1. Parties wishing to establish a virtual charter school shall establish a non-profit corporation and apply to one of the three chartering entities in North Carolina, but must receive final approval by the [SBOE]. A separate application created specifically for virtual applicants will include plans detailing how the virtual charter school proposes to provide technology hardware and internet connectivity to enrolled students.
>
> 2. The process of application review for final approval by the [SBOE] shall follow the same timelines and procedures established for all other charter applicants.
>
> 3. The virtual charter applicant shall submit a copy of the application to every Local Education Agency (LEA) in North Carolina from which the virtual charter school may attract students. Each LEA will have the ability to provide an Impact Statement related to the proposed virtual charter school.
>
> 4. Those designated to review virtual charter applications on behalf of the [SBOE] are under no obligation to recommend that the [SBOE] grant a preliminary charter to any applicant group. The focus of any recommendation must be solidly based upon the quality of the application and historical achievement attained by the intended provider.

permit the intervenors to join the instant proceeding, no error of law has been committed.

NCVA also cites *In re Complaint*, 146 N.C. App. 258, 552 S.E.2d 230 (2001), in support of its contention that the trial court committed error by allowing the intervenors to join the proceeding. However, *In re Complaint* is not applicable to the present matter.

In *In re Complaint*, the petitioner's claim was dismissed after our Court found that the petitioner was not personally aggrieved by the decision of the North Carolina Veterinary Medical Board to discipline one of its licensees who harmed the petitioner's pet. Our Court found

---

5. Should a virtual charter school applicant receive preliminary approval, the board members that will have statutory responsibility for all operating procedures of the charter school shall complete the mandatory planning year established in [SBOE] policy.

6. Any virtual applicant group that receives a charter from the [SBOE] will receive a charter term no longer than three years for the initial charter, no virtual charter will receive a renewal charter term longer than five years.

7. The virtual charter school shall have an actual, physical location within the geographic boundaries of the state of North Carolina.

8. Should a virtual applicant receive final approval from the [SBOE], the charter agreement will be tailored to virtual charter schools with the inclusion of additional standards related to overall performance. Failure to meet any of these standards may result in the revocation and/or non-renewal of the charter:

a) The virtual charter school must test at least 95% of its students during any academic year for purposes of the State's accountability system.

b) The virtual charter school's graduation rate must be no less than 10% below the overall state average for any two out of three consecutive years.

c) The virtual charter school cannot have a student withdrawal rate any higher than 15% for any two out of three consecutive years. This rate will be calculated by comparing the first and ninth month Principal's Monthly Report.

d) The virtual charter school's student-to-teacher ratio cannot exceed 50 to 1 per class. This calculation excludes academic coaches, learning partners, parents, or other non-teachers of record.

9. The virtual charter school will be funded as follows: the proposed virtual charter school shall receive the same rate as a full-year course in the NC Virtual Public School for eight courses per student. The virtual charter school will not receive local funds. Federal funding for which the virtual charter schools are eligible can be received provided the charter school completes the appropriate documentation.

that the petitioner was not aggrieved because the only actions taken were against the veterinarian and thus, the petitioner was not directly affected by the decision. Here, the ruling of the administrative law judge had a direct impact on the intervenors, as the granting of a license to a virtual charter school would have an immediate impact upon school boards across the state. Accordingly, the intervenors are aggrieved parties who were properly joined.

*IV.*

[4] The fourth argument by NCVA is that the Office of Administrative Hearings was the appropriate forum for hearing its claim. We disagree.

Assuming that a party is in fact aggrieved, a party aggrieved by a state agency can seek relief under N.C. Gen. Stat. § 150B-44 (2011).

> Unreasonable delay on the part of any agency or [ALJ] in taking any required action shall be justification for. any person whose rights, duties, or privileges are adversely affected by such delay to seek a court order compelling action by the agency or [ALJ]. Failure of an [ALJ] subject to Article 3 of this Chapter or failure of an agency subject to Article 3A of this Chapter to make a final decision within 120 days of the close of the contested case hearing is justification for a person whose rights, duties, or privileges are adversely affected by the delay to seek a court order compelling action by the agency or by the [ALJ].

NCVA argues that this statute does not require an aggrieved party to follow its procedure, and that had NCVA followed the statute, a waiting period of 120 days would have precluded it from enjoying the relief sought. However, N.C.G.S. § 150B-44 clearly states that an agency's delay for 120 days in making a decision allows a party who is adversely affected by the delay to bring an action to compel the agency to make a decision.

---

10. The virtual charter school must offer "regular educational opportunities" to its students through meetings with teachers, educational field trips, virtual field trips attended synchronously, virtual conferencing sessions, or asynchronous offline work assigned by the teacher of record.

11. The virtual charter school shall comply with all statutory requirements and [SBOE] policies that apply to charter schools unless specifically excluded herein.

The requirements for a virtual charter school are embodied in the application (attached with this policy); and both become effective the date of this policy.

This is "a statutory provision for mandamus—*i.e.*, if an agency fails to act within the applicable period, the applicant may bring an action in *state* court to compel a decision on the application." *HCA Crossroads*, 327 N.C. at 583, 398 S.E.2d at 473 (citation omitted) (emphasis added). Where, however, an agency has not acted and is under no direction to act, there exists no contested case and no authority for a hearing in the Office of Administrative Hearings.

Here, NCVA filed a petition for a contested case hearing in the Office of Administrative Hearings on 21 March 2012, only six days after the 15 March deadline, citing the SBOE's lack of response to NCVA's application. NCVA contends it could not wait 120 days before filing for the relief available to it in N.C.G.S. § 150B-44. However, as discussed above, NCVA could only obtain relief from the SBOE's purported refusal to grant final approval to NCVA's application by the 15 March deadline by waiting 120 days before filing judicial relief. Accordingly, NCVA has failed to follow the appropriate path to seek judicial relief from an agency's purported failure to respond to an application.

NCVA further argues that it followed proper procedure pursuant to N.C. Gen. Stat. § 150B-23(a)(5). N.C.G.S. § 150B-23(a)(5) (2011) states that

> [a] contested case shall be commenced by paying a fee in an amount established in G.S. 150B-23.2 and by filing a petition with the [OAH] and, except as provided in Article 3A of this Chapter, shall be conducted by [the OAH]. . . . A petition shall be signed by a party or a representative of the party and . . . shall state facts tending to establish that the agency named as the respondent has deprived the petitioner of property, has ordered the petitioner to pay a fine or civil penalty, or has otherwise substantially prejudiced the petitioner's rights and that *the agency . . . [f]ailed to act as required by law or rule.*

Although NCVA is correct that N.C.G.S. § 150B-23(a)(5) sets forth the proper procedure for filing a petition for a contested case proceeding, it must be noted that the statute also clearly requires that in order for a petition for a contested case proceeding to be filed, an agency must "fail[] to act as required by law or rule." We see nothing in N.C.G.S. § 150B-23(a)(5) that permits a petition for a contested case proceeding to be filed where an agency has not acted when the agency is under no statutory direction to act.

As discussed previously under NCVA's first and second arguments on appeal; the SBOE's applicable statutes are directory rather than jurisdictional and thus, contain no specific language regarding the consequences of a failure to act. By not responding to NCVA's application, the SBOE has not "[f]ailed to act as required by law or rule," and thus, N.C.G.S. § 150B-23(a)(5) is not applicable because it requires that an agency "fail[] to act as required by law or rule" before a petition for a contested case proceeding can be filed. We acknowledge with approval the trial court's conclusion that

> [i]naction can constitute "action" sufficient to trigger jurisdiction in OAH pursuant to G.S. § 150B-23, provided there is an obligation to act. Failure to do so is actionable; however, in this case the [SBOE] was not obligated to act further having done so through the previously cited policy stated at the October 2011 meeting.

Therefore, where an agency such as the SBOE has declined to make a decision regarding a petitioner because the agency is not required by statute to do so, a petitioner's only available form of relief must come pursuant to N.C.G.S. § 150B-44 on grounds that the agency's decision is unreasonably delayed for more than 120 days.

## V.

**[5]** NCVA's final argument is that the trial court allowed the amendment of the record in contravention of the law. We disagree.

> Within 30 days after receipt of the copy of the petition for review, or within such additional time as the court may allow, the Office of Administrative Hearings shall transmit to the reviewing court the original or a certified copy of the official record in the contested case under review. With the permission of the court, the record may be shortened by stipulation of all parties to the review proceedings. Any party unreasonably refusing to stipulate to limit the record may be taxed by the court for such additional costs as may be occasioned by the refusal. The court may require or permit subsequent corrections or additions to the record when deemed desirable.

N.C. Gen. Stat. § 150B-47 (2011).

> A party or person aggrieved who files a petition in the superior court may apply to the court to present additional evidence. If the court is satisfied that the evidence

is material to the issues, is not merely cumulative, and could not reasonably have been presented at the administrative hearing, the court may remand the case so that additional evidence can be taken. If an administrative law judge did not make a final decision in the case, the court shall remand the case to the agency that conducted the administrative hearing under Article 3A of this Chapter. After hearing the evidence, the agency may affirm or modify its previous findings of fact and final decision. If an administrative law judge made a final decision in the case, the court shall remand the case to the administrative law judge. After hearing the evidence, the administrative law judge may affirm or modify his previous findings of fact and final decision. The additional evidence and any affirmation or modification of a final decision shall be made part of the official record.

N.C. Gen. Stat. § 150B-49 (2011).

NCVA argues that the trial court erred in amending the record and allowing evidence because it failed to abide by N.C.G.S. § 150B-49 when it accepted NCVA's application into evidence. NCVA further argues that even if N.C.G.S. § 150B-49 was not violated, § 150B-47 was violated because the trial court did not properly follow the requirements for the admission of new evidence.

The record before this Court indicates that the trial court admitted NCVA's application into evidence because it was relevant to the matter at hand, despite not being admitted into evidence during the administrative hearing. "The court may require or permit subsequent corrections or additions to the record when deemed desirable." *High Rock Lake Partners, LLC, v. N.C. Dep't of Transp.*, ___ N.C. App. ___, ___, 720 S.E.2d 706, 713 (2011), *rev'd on other grounds by High Rock Lake Partners, LLC, v. N.C. Dep't of Transp.*, 366 N.C. 315, 735 S.E.2d 300 (2012) (citing N.C.G.S. § 150B-47 (2009) (amended by Section 24 of Session Law 2011-398 and applying to contested cases commenced on or after 1 January 2012) (holding the superior court did not abuse its discretion under N.C.G.S. § 150B-47 in granting a motion to supplement the record)). The trial court also noted that the application was admitted into evidence in order to preserve a complete record of all relevant evidence for purposes of appeal. This permitting of subsequent additional evidence is within the language of N.C.G.S. § 150B-47, as "[t]he court may require or permit subsequent corrections or additions to the record when deemed desirable."

NCVA further argues that the admission of the application was prejudicial. We disagree, as nothing in the trial court's findings indicate that the admission of NCVA's application was erroneous or prejudicial to NCVA. The trial court, in its findings of fact and conclusions of law, does not discuss NCVA's application at any point, instead focusing on evidence which was presented during the administrative hearing. As such, the admission of NCVA's application was not prejudicial. Accordingly, the trial court did not err in permitting the amendment of the record.

Affirmed.

Judges STEPHENS and DILLON concur.

