PATRICIA DIGGS, Petitioner v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent

No. COA02-550

(Filed 15 April 2003)

**Declaratory Judgments— public assistance paid to adult caretaker—person aggrieved**

Although petitioner contends the trial court erred by reversing a declaratory ruling of the North Carolina Department of Health and Human Services under N.C.G.S. § 150B-4 holding that

the practice of calculating the debt owed to the State when an adult caretaker accepts payment of benefits under the Work First Families Assistance (WFFA) and Temporary Assistance to Needy Families (TANF) programs or its predecessor Aid to Families with Dependent Children (AFDC) was valid, the declaratory ruling has no effect because petitioner is not presently a person aggrieved and was not entitled to request a declaratory ruling under N.C.G.S. § 150B-4.

Appeal by petitioner and respondent from order entered 17 December 2001 by Judge Claude S. Sitton in Mecklenburg County Superior Court. Heard in the Court of Appeals 30 January 2003.

*Legal Services of Southern Piedmont, Inc., by Douglas Stuart Sea, and Legal Aid of North Carolina, Inc., by Theodore O. Fillette, for petitioner-appellant-appellee.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Gerald K. Robbins, for respondent-appellant-appellee.*

CALABRIA, Judge.

This appeal arises from an order issued by the trial court reversing a declaratory ruling of the North Carolina Department of Health and Human Services ("DHHS") requested by Patricia Diggs ("petitioner"). Petitioner, a custodial parent of three children and the former adult caretaker of her niece, Shae Little, petitioned DHHS on 1 June 2001 for a declaratory ruling pursuant to N.C. Gen. Stat. § 150B-4 alleging the practice of calculating the debt owed to the State when an adult caretaker accepts payment of benefits under the Work First Families Assistance ("WFFA") and Temporary Assistance to Needy Families ("TANF") programs or its predecessor, Aid to Families with Dependent Children ("AFDC"), was invalid. By doing so, petitioner represented she was aggrieved as defined by the North Carolina Administrative Procedure Act ("NCAPA") by the challenged practice. DHHS issued a declaratory ruling on 30 July 2001 upholding the validity of the challenged practice. Petitioner sought judicial review of the declaratory ruling in the Superior Court of Mecklenburg County, and in an amended order entered 17 December 2001, the Honorable Claude S. Sitton reversed the ruling of DHHS, finding the challenged practice violated North Carolina law and was, therefore, void and of no effect. The trial court limited its order to petitioner's case only. Petitioner appeals as to the scope

of the order. DHHS cross-appeals as to the merits of the order of the trial court.

DHHS, through the Office of Child Support Enforcement of the Division of Social Services, is responsible for the operation of North Carolina's child support enforcement program. North Carolina provides assistance to families with dependent children who are deprived of financial support through the WFFA program, operated pursuant to a federal block grant under the TANF program.[1] Acceptance of public assistance creates a debt due and owing to the State in an amount up to the amount of public assistance paid. N.C. Gen. Stat. § 110-135 (2001). When public assistance is paid out to an adult caretaker, a single account for all unreimbursed public assistance ("URPA account") is created by DHHS to measure the debt due to the State. The adult caretaker receiving public assistance funds assigns to the State the right to collect child support from the party responsible for supporting the child or children benefitted by the public assistance. N.C. Gen. Stat. § 110-137 (2001). Thereafter, child support paid by a responsible party for such children is retained by the State until this debt is repaid. Thus, the single URPA account does not differentiate between the debts created by public assistance grants paid for the benefit of different individuals or groups where they have the same adult caretaker. In addition, the account operates without regard to who is ultimately responsible for reimbursing the State for the public assistance previously paid. Therefore, DHHS reimburses the URPA account by retaining child support for any child paid to a previous recipient of public assistance regardless of whether the child support retained is intended to benefit the same child as the previous public assistance.

Petitioner asserts she is a "person aggrieved" within the meaning of N.C. Gen. Stat. §§ 150B-2(6) and 150B-4 and is entitled to request a declaratory ruling to determine her rights, duties, and obligations because DHHS combines the debts to the State for all monthly cash assistance grants ever paid to the same adult caretaker into a single URPA account.

---

1. Prior to January 1, 1997, assistance was provided under the AFDC program. With the passage of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Congress repealed the AFDC program and replaced it with the TANF program.

**DIGGS v. N.C. DEP'T OF HEALTH & HUMAN SERVS.**

[157 N.C. App. 344 (2003)]

Under N.C. Gen. Stat. § 150B-4 (2001)[2], only a "person aggrieved" may request a declaratory ruling concerning the applicability of a statute, rule or order of an agency to a given state of facts. A "person aggrieved" is "any person or group of persons of common interest directly or indirectly *affected substantially* in his or its person, property, or employment by an administrative decision." N.C. Gen. Stat. § 150B-2(6) (2001) (emphasis added). "In order for [a] petitioner to prevail on her claim to status as a 'person aggrieved' under the NCAPA, [a] petitioner must first demonstrate that her personal, property, employment or other legal rights have been in some way impaired." *In re Denial of Request for Full Admin. Hearing*, 146 N.C. App. 258, 261, 552 S.E.2d 230, 232, *disc. rev. denied*, 354 N.C. 573, 558 S.E.2d 867 (2001) (citation omitted).

Petitioner asserts she is a person aggrieved. As a former public assistance recipient under both the TANF program and the preceding AFDC program, petitioner argues DHHS' practice of debt repayment may directly affect her. Specifically, petitioner contends future child support payments for the care of her children may be usurped to repay the public assistance previously paid solely for Shae Little.

Petitioner illustrates this contention with two hypothetical situations involving whether child support paid by the biological father of petitioner's children, James Stitt ("Stitt"), pursuant to a court order for the support of their biological children may be taken by the State for reimbursement of earlier and separate public assistance grants made solely for the use and benefit of petitioner's niece, Shae Little. Shae Little no longer lives with petitioner's family, nor does petitioner receive public assistance. While petitioner cared for Shae Little, public assistance in the form of "child-only" grants was paid solely for the needs of Shae Little.

In her first hypothetical, petitioner argues if she becomes unemployed and if Stitt ceases to pay child support, petitioner may need TANF assistance for her children. Petitioner further hypothesizes if she has no other income at that time and if all other facts remain as they are presently, she would be eligible for a TANF grant. Thereafter, if Stitt pays child support in the same month petitioner receives

---

2. North Carolina General Statute § 150B-4 states in relevant part:

On request of a person aggrieved, an agency shall issue a declaratory ruling as to the validity of a rule or as to the applicability to a given state of facts of a statute administered by the agency or of a rule or order of the agency, except when the agency for good cause finds issuance of a ruling undesirable.

TANF assistance, petitioner correctly asserts that, under the current practice, DHHS would keep the entire amount of the payment made by Stitt until the entire URPA balance is reduced to zero, meaning part of Stitt's child support payments would be used to pay the debt created by the previous State support payments for petitioner's niece, to whom Stitt owes no obligation of support.

In her second hypothetical, petitioner argues if she and her children receive TANF assistance and if Stitt pays no child support during that time, petitioner's URPA balance and Stitt's unpaid child support arrearages will increase. If Stitt's federal tax refunds are intercepted for purposes of paying child support arrearages, then petitioner correctly asserts that, under the current practice, DHHS would retain all of that interception until the URPA balance is reduced to zero, meaning part of Stitt's intercepted tax refund would be used to pay the debt created by the previous State support payments for petitioner's niece, to whom Stitt owes no obligation of support.

The flaw in these arguments is manifest: petitioner is not presently aggrieved. At most, petitioner may be aggrieved at some unspecified point in the future if certain events occur. Nothing in the record indicates these events are certain to come to pass, are imminently threatened, or are even likely to occur. At most, if a number of variables happen in the manner laid out by petitioner's hypotheticals, then at that point, petitioner *will become* aggrieved; however, it is quite clear that petitioner has not "demonstrate[d] that her . . . legal rights have been in some way impaired." *In re Denial of Request for Full Admin. Hearing*, 146 N.C. App. at 261, 552 S.E.2d at 232. Therefore, petitioner is not presently a "person aggrieved" and was not entitled to request a declaratory ruling under N.C. Gen. Stat. § 150B-4.

Petitioner asserts, in the alternative, that an issued declaratory ruling is binding on both the requesting party and the issuing agency unless it is altered or set aside by the courts; therefore, petitioner would be bound in the future by DHHS' practice absent judicial review of the ruling. N.C. Gen. Stat. § 150B-4 (2001). In short, petitioner argues because DHHS chose to issue a declaratory ruling and because a validly issued declaratory ruling is binding on the requesting party, petitioner *became* a "person aggrieved" within the meaning of the NCAPA when DHHS issued the ruling.

The declaratory ruling in the case *sub judice* was issued pursuant to N.C. Gen. Stat. § 150B-4, which, absent good cause shown, requires an agency to issue a declaratory ruling when two prerequisites are satisfied: (1) a request for a declaratory ruling is made (2) by a person aggrieved. N.C. Gen. Stat. § 150B-4 (2001). The validity of any declaratory ruling issued pursuant to N.C. Gen. Stat. § 150B-4 is contingent upon the satisfaction of those two prerequisites. Because petitioner was not aggrieved at the time the request was made, the request was ineffective to trigger the issuance of a declaratory ruling, and the declaratory ruling has no effect, binding or otherwise, on petitioner from which an aggrieved status may arise.

In sum, we find it is not necessary to reach the merits or scope of the declaratory ruling. Petitioner was not aggrieved, as required by N.C. Gen. Stat. § 150B-4, by the URPA accounting method at the time the request for a declaratory ruling was made; therefore, no valid declaratory ruling issued. Accordingly, petitioner's claim of aggrieved status due to the issuance of a valid and binding declaratory ruling is without merit. The order of the trial court is set aside. We remand to the trial court with instructions to remand to and order that the agency vacate the declaratory ruling.

Vacated and remanded with instructions.

Judges McGEE and HUNTER concur.