N.C. Acupuncture Licensing Bd. v. N.C. Bd. of Physical Therapy Exam'rs, 2017 NCBC 66.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| WAKE COUNTY | 16 CVS 9539 |

NORTH CAROLINA ACUPUNCTURE LICENSING BOARD,

        Petitioner,

v.

NORTH CAROLINA BOARD OF PHYSICAL THERAPY EXAMINERS

        Respondent.

**ORDER AND OPINION ON PETITION FOR JUDICIAL REVIEW**

1.    **THIS MATTER** is before the Court upon the North Carolina Acupuncture Licensing Board's (the "Acupuncture Board" or "Petitioner") Petition for Judicial Review (the "Petition") of a declaratory ruling (the "Declaratory Ruling") issued pursuant to N.C. Gen. Stat. § 150B-4 by the North Carolina Board of Physical Therapy Examiners (the "Physical Therapy Board" or "Respondent") in the above-captioned case. For the reasons discussed below, the Court **AFFIRMS** the Declaratory Ruling.

> *Everett Gaskins Hancock, LLP, by E.D. Gaskins, Jr., James M. Hash, and Fiona K. Steer, and Stevens Martin Vaughn & Tadych, PLLC, by Michael J. Tadych, for Petitioner North Carolina Acupuncture Licensing Board.*

> *Ellis & Winters LLP, by Matthew W. Sawchak, Stephen Daniel Feldman, Troy D. Shelton, and James M. Weiss, for Respondent North Carolina Board of Physical Therapy Examiners.*

Bledsoe, Judge.

# I.

## BACKGROUND

A. <u>Prior History</u>

2.      This action arises out of an ongoing disagreement between the Acupuncture Board and the Physical Therapy Board over whether a procedure known as "dry needling" is acupuncture and thus subject to the exclusive regulation of the Acupuncture Board.  Dry needling is the insertion of solid filament needles into specific trigger points in a patient's muscle tissue to relieve pain.  (Declaratory Ruling 4–5; Pet. Judicial Review 2.)  The Acupuncture Board views dry needling as indistinct from the practice of acupuncture because both procedures use identical needles, which are inserted at the same places in the body and manipulated in the same way to achieve the same therapeutic results.  (Pet. for Judicial Review 2.)  The Physical Therapy Board currently takes the position that dry needling falls within the scope of physical therapy and may be performed by physical therapists in North Carolina.

3.      The Acupuncture Board brought this dispute before the undersigned in a previous case, *N.C. Acupuncture Licensing Bd. v. N.C. Bd. of Physical Therapy Examiners*, No. 15 CVS 12012 (N.C. Super. Ct. Wake Cnty.), petitioning the Court for a declaratory judgment that dry needling does not fall within the statutory scope of physical therapy in North Carolina.  The Court dismissed that case on jurisdictional grounds; in particular, the Court held that it lacked jurisdiction because the Acupuncture Board had not exhausted available administrative remedies under North Carolina's Administrative Procedure Act, including sections 150B-4 and 150B-

20. *N.C. Acupuncture Licensing Bd. v. N.C. Bd. of Physical Therapy Examiners*, 2016 NCBC LEXIS 33, at \*24 (N.C. Super. Ct. Apr. 26, 2016) (hereinafter, "*NC Acupuncture I*").

4. The Acupuncture Board's request draws on the history of the parties' dispute about the regulation of dry needling. In 2002, the Physical Therapy Board, as reflected in its newsletters for licensees, took the position that dry needling was a form of acupuncture and outside the scope of practice of physical therapists. (R. at 233.) The Physical Therapy Board revised its view eight years later and issued a position statement in September 2010 concluding that dry needling is within the scope of practice of physical therapists. (R. at 297–99.)

5. In response, the Acupuncture Board sought a formal Attorney General Opinion addressing whether dry needling is within the scope of practice of physical therapists. In response, the Attorney General's office issued an advisory letter (the "Advisory Letter") on December 1, 2011. The Advisory Letter took the position that dry needling is distinct from acupuncture and that it is within the Physical Therapy Board's power to determine whether dry needling falls within the scope of practice of physical therapists. (R. at 267.) The Advisory Letter cautioned that, in order to fulfill the Board's statutory mandate to safeguard the public health, the Physical Therapy Board should adopt administrative rules and standards to ensure that dry needling only be practiced by physical therapists with a requisite level of skill and competence. (R. at 267–68.)

6. In 2014, the Physical Therapy Board undertook rulemaking procedures and proposed a rule setting training standards for dry needling. (R. at 237.) The proposed rule defined dry needling as "a technique using the insertion of a solid filament needle, without medication, into or through the skin to treat various impairments," and would have required at least fifty-four additional hours of training for physical therapists who wished to perform dry needling. (R. at 237.) The Physical Therapy Board submitted the proposed rule to the Rules Review Commission in accordance with N.C. Gen. Stat. § 150B-21.8. Representatives of the Acupuncture Board opposed the proposed rule in writing and in person at a January 15, 2015 hearing. (R. at 307.) At the hearing, the Rules Review Commission orally voted to object to the proposed rule. (R. at 2075.) In a follow-up letter dated January 26, 2015, the Rules Review Commission memorialized the basis for its objection: "The Commission objected to this Rule based upon lack of statutory authority. [The Rule], as adopted by the agency, addresses a matter not within the authority delegated to the agency by the General Assembly, as required by [N.C. Gen. Stat. §] 150B-21.9(a)." (R. at 238.)

7. The Physical Therapy Board did not pursue its statutory rights to challenge the Rules Review Commission's objection to the proposed rule. Instead, the Physical Therapy Board posted on its website a revised position statement on January 16, 2015 (the "Revised Position Statement"), the day after the Rules Review Commission voted to object to the proposed rule. The Revised Position Statement expresses the Physical Therapy Board's view that the Attorney General's Advisory Letter still stands. The Revised Position Statement states the Physical Therapy Board's

conclusion that "physical therapists can continue to perform dry needling so long as they possess the requisite education and training required by N.C.G.S. § 90-270.24(4), but there are no regulations to set the specific requirements for engaging in dry needling." (R. at 239.)

8.     The Acupuncture Board filed suit to enjoin the Physical Therapy Board from instructing physical therapists that they could practice dry needling, and the Court in *NC Acupuncture I* dismissed the complaint on April 26, 2016. On May 2, 2016, the Acupuncture Board requested a declaratory ruling from the Physical Therapy Board pursuant to N.C. Gen. Stat. § 150B-4. (R. at 1.) The Acupuncture Board requested a ruling "that the [Physical Therapy] Board publicly declare that 'dry needling' is not within the scope of the Physical Therapy Act and withdraw the position statement of January 16, 2015 . . . because it is in conflict with the determination of the Rules Review Commission." (R. at 1.)

B. <u>The Declaratory Ruling and the Petition for Judicial Review</u>

9.     The Physical Therapy Board issued the Declaratory Ruling on June 27, 2016. The Declaratory Ruling summarizes the conclusions of the Physical Therapy Board that:

- the scope of physical therapy under North Carolina law includes dry needling;
- the scope of health professions is dynamic, not static;
- dry needling is distinct from acupuncture;
- the Acupuncture Board's request fails to recognize that health professions are allowed to have overlapping scopes of practice;
- there is no conflict between this ruling and the Rules Review Commission's January 15, 2015 objection to the Board's proposed rule on additional training requirements for dry needling;
- North Carolina public policy favors patient choice in health care; and

- the Acupuncture Board's desired ruling would violate the anti-monopoly provision in the North Carolina Constitution.

(Notice of Designation Ex. E., hereinafter "Declaratory Ruling," 3.)

10.    The Acupuncture Board exercised its right under North Carolina's Administrative Procedure Act, N.C. Gen. Stat. § 150B-1 *et seq.*, to seek judicial review of the Declaratory Ruling by filing the Petition on July 27, 2016.  Pursuant to N.C. Gen. Stat. § 150B-46, the Petition catalogues the Acupuncture Board's exceptions to the Declaratory Ruling and states its requested relief.  The Acupuncture Board's Petition sets forth sixteen exceptions to the Declaratory Ruling, which the Acupuncture Board's opening brief in support of the Petition distills into two arguments: (i) that the Physical Therapy Board is bound by the decision of the Rules Review Commission in issuing its Declaratory Ruling and Revised Position Statement; and (ii) that the Physical Therapy Board wrongly concluded that dry needling falls within the statutory scope of physical therapy.  The Acupuncture Board seeks a final judgment that reverses the Declaratory Ruling and holds that dry needling is acupuncture and not within the scope of physical therapy.  (Pet. Judical Review, Prayer for Relief.)  The Court held a hearing on the Petition, and the matter is now ripe for decision.

## II.

## STANDARD OF REVIEW

11.    In reviewing a final agency decision, the Court acts in the capacity of an appellate court, and the standard of review depends on the issue presented.  *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 12, 565 S.E.2d 9, 17 (2002).

N.C. Gen. Stat. § 150B-51(b) specifically addresses a trial court's authority in this context and provides as follows:

> The court reviewing a final [agency] decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusion or decisions are:
>
> (1) In violation of constitutional provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge
> (3) Made upon unlawful procedure;
> (4) Affected by other error of law;
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
> (6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b).

12. The first four grounds for reversing an agency's decision listed in section 150B-51(b)(1)–(4) are characterized as law-based inquiries and receive *de novo* review; the final two grounds listed in section 150B-51(b)(5)–(6) are characterized as fact-based inquiries and reviewed under the "whole record" test. *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 659, 599 S.E.2d 888, 894–95 (2004); N.C. Gen. Stat. § 150B-51(c).

13. When conducting a *de novo* review of an agency action under the Administrative Procedure Act, the Court reviews the matter anew and substitutes its own judgment for the judgment of the agency. *Carroll* at 660, 599 S.E.2d at 895. "The judicial review provisions of the [Administrative Procedure Act]," however, "should not be construed to substantially undermine the General Assembly's judgment that administrative agencies, not courts, should perform the primary fact-

finding function in contested cases." *Id.* at 662, 599 S.E.2d at 896 (reversing where the trial court made independent findings of fact while conducting *de novo* review of the agency's legal conclusions). Therefore, "where the findings of fact of an administrative agency are supported by substantial competent evidence in view of the entire record, they are binding on the reviewing court, and that court lacks authority to make alternative findings at variance with the agency's." *Id.* at 663, 599 S.E.2d at 897.

## III.

## ANALYSIS

14. Prior to engaging the Acupuncture Board's arguments, the Court first considers it helpful to discuss the nature of the Declaratory Ruling. A declaratory ruling can be sought "as to the validity of a rule or as to the applicability to a given state of facts of a statute administered by the agency or a rule or order of the agency[,]" or "to resolve a conflict or inconsistency within the agency regarding an interpretation of the law or a rule adopted by the agency." N.C. Gen. Stat. § 150B-4(a). "A declaratory ruling is binding on the agency and the person requesting it unless it is altered or set aside by the court." *Id.* The Declaratory Ruling issued by the Physical Therapy Board therefore is binding only on the Physical Therapy Board and the Acupuncture Board. *See also Diggs v. N.C. Dep't of Health and Human Servs.*, 157 N.C. App. 344, 349, 578 S.E.2d 666, 669 (2003) (holding that a declaratory ruling was void where petitioner did not have standing to seek a declaratory ruling).

15. Thus, the Declaratory Ruling is of limited applicability, and it lacks the same universal force as a promulgated regulation. *Compare In re A Declaratory Ruling by the N.C. Comm'r of Ins. Regarding 11 N.C.A.C. 12.0319*, 134 N.C. App. 22, 30, 517 S.E.2d 134, 140 (1999) (citing *Taylor v. Superior Motor Co.*, 227 N.C. 365, 367, 42 S.E.2d 460, 461 (1947)) ("Where an agency has the authority to act, its rules and regulations have the binding effect of statutes and may accordingly alter the common law."), *with Texas v. United States*, 866 F.2d 1546, 1555 (5th Cir. 1989) ("Rendered in a specific factual context and resolving only the question presented by [the] petitions, [the declaratory ruling] belongs to the genre of adjudicatory rulings.") (citation and internal punctuation omitted).[1] *See also* Opinion of Attorney General to Rep. Cherie Berry, 1995 N.C. AG LEXIS 75, at *3 (Dec. 11, 1995) ("The JOBS Manual is a statement of agency policy and has not been adopted as a rule. Thus, it does not have the force of law.")

A. Procedural Arguments

16. The Acupuncture Board advances several arguments contending that the Declaratory Ruling and the underlying Revised Position Statement are the result of unlawful procedure. These are law-based inquiries and receive *de novo* review. *See* N.C. Gen. Stat. § 150B-51(b)(3).

---

[1] There are many significant differences in the treatment of declaratory rulings under North Carolina's Administrative Procedure Act and declaratory orders under the federal Administrative Procedure Act. The Court nevertheless considers this comparison useful here because the purpose of declaratory orders under the federal Act—"to terminate a controversy or remove uncertainty," 5 U.S.C. § 554(e)—is substantially similar to the purpose of declaratory rulings under North Carolina's law—"to resolve a conflict or inconsistency within the agency regarding an interpretation of the law," N.C. Gen. Stat. § 150B-4(a).

1. The Effect of the Rules Review Commission's Objection

17. The chief argument advanced by the Acupuncture Board is that the Declaratory Ruling must be reversed because the Rules Review Commission's objection to the proposed rule precludes the Physical Therapy Board from subsequently taking the position in the Revised Position Statement and the Declaratory Ruling that dry needling is within the scope of physical therapy. (Pl.'s Br. Supp. Pet. Judicial Review 6.) The Court disagrees.

18. From the Acupuncture Board's point of view, the Rules Review Commission's objection to the proposed rule constituted a final determination binding against all persons and entities and for all purposes that dry needling is not within the scope of physical therapy under North Carolina law. From the Physical Therapy Board's point of view, however, the Rules Review Commission's objection merely blocked its proposed training requirements for physical therapists to perform dry needling but did not restrict the Board's ability to issue an interpretive statement regarding the Board's view that dry needling falls within the scope of physical therapy. These divergent views turn on the parties' competing interpretations of the authority given to the Rules Review Commission by the North Carolina Administrative Procedure Act.

19. "In matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished. Legislative purpose is first ascertained from the plain words of the statute." *Elec. Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) (internal citations omitted).

Analyzing the plain language and structure of the Administrative Procedure Act, the Court concludes that the Rules Review Commission's objection does not have a preclusive effect outside of the rulemaking process.

20. The purpose of the Rules Review Commission, as set forth in its enabling statute, is to "review[] administrative rules in accordance with [the Administrative Procedure Act]." N.C. Gen. Stat. § 143B-30.2. The Administrative Procedure Act gives the Rules Review Commission limited authority to review rules; the Commission can approve or object to only the specific rules submitted to it. N.C. Gen. Stat. § 150B-21.10. Approval of a rule by the Rules Review Commission is a necessary step in formal rulemaking, and an agency cannot adopt a permanent rule without approval by the Rules Review Commission. N.C. Gen. Stat. § 150B-21.8. The Rules Review Commission can object to a rule for one of four reasons: (i) the rule is not within the agency's delegated authority; (ii) the rule is unclear and ambiguous; (iii) the rule is not reasonably necessary to implement or interpret state or federal law; or (iv) the agency failed to follow the strictures of the rulemaking process. *See* N.C. Gen. Stat. §§ 150B-21.9(a), -21.10.

21. When the Rules Review Commission objects to an agency's proposed rule, the agency effectively has three options: (i) the agency can revise and resubmit the rule in light of the Rules Review Commission's objection; (ii) the agency can request that the Rules Review Commission return the rule to the agency because the agency has decided not to revise the rule, N.C. Gen. Stat. § 150B-21.12; or (iii) if the agency seeks return of the rule and decides not to address the objection, the agency may then

elect to file a declaratory judgment action to seek judicial review of the Rules Review Commission's objection, N.C. Gen. Stat. § 150B-21.8(d). Here, the parties do not dispute that the Physical Therapy Board exercised the second option; it sought return of the rule and elected not to seek judicial review of the Rules Review Commission's objection.

22. The statutory provisions outlined above clearly identify the Rules Review Commission's role as a gatekeeper in the rulemaking process. Indeed, all of the statutory provisions describing the role of the Rules Review Commission fall within Article 2A—entitled Rules—of the Administrative Procedure Act. *See Elec. Supply Co.*, 328 N.C. at 656, 403 S.E.2d at 294 ("Moreover, we are guided by the structure of the statute[.]").

23. No part of the statutory framework, however, indicates that the legislature intended the Rules Review Commission's objection to a specific rule to restrict an agency's ability to act on a particular subject matter when the agency is lawfully acting outside of formal rulemaking procedures.[2] Indeed, the plain language of the statute clearly suggests that an objection by the Rules Review Commission is only relevant to rulemaking and the specific rules under consideration because the Commission can object on relatively minor grounds that a proposed rule is unclear or accompanied by procedural error and because the statutory framework contemplates

---

[2] *See infra* ¶¶ 28–37 for a discussion of the Court's conclusion that the Revised Position Statement and Declaratory Ruling do not violate the requirements for formal rulemaking contained in section 150B-2(8a).

that a party may propose successive rules as circumstances and an agency's policy preferences change and evolve.

24. Given the nature of the Rules Review Commission's limited authority to review and object to proposed rules, the Court concludes that it would unreasonably expand the scope of the relevant statutory language to conclude, as the Acupuncture Board urges, that an objection by the Rules Review Commission has vast preclusive effect on the rule-proposing agency outside formal rulemaking. *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 216, 388 S.E.2d 134, 141 (1990) ("A statute is presumed not to have been intended to produce absurd consequences, but rather to have the most reasonable operation that its language permits.") This is particularly true in light of the Acupuncture Board's failure to identify any case law supporting its view that the Rules Review Commission's objection precludes the Physical Therapy Board from stating its belief and its determination in the Declaratory Ruling that dry needling falls within the scope of physical therapy.

25. Thus, applying basic rules of statutory construction, and in the absence of controlling case law to the contrary, the Court concludes that the Rules Review Commission's objection does not constitute a final determination that dry needling is outside the scope of physical therapy under North Carolina law.

### 2. Exhaustion of Remedies

26. The Acupuncture Board argues further that even if the objection by the Rules Review Commission has no preclusive effect on the Physical Therapy Board's ability to reach the conclusions in the Declaratory Ruling, the Physical Therapy

Board is procedurally prohibited from doing so because it failed to pursue its right to seek judicial review of the Rules Review Commission's objection. (Pl.'s Br. Supp. Pet. Judicial Review 10.) This argument relies on the doctrine of exhaustion of administrative remedies, which holds that "[s]o long as the statutory procedures provide effective judicial review of an agency action, courts will require a party to exhaust those remedies." *Flowers v. Blackbeard Sailing Club, Ltd.*, 115 N.C. App. 349, 352, 444 S.E.2d 636, 638 (1994). Reliance on this doctrine in this context is misplaced, however.

27. As this Court stated when applying the doctrine in *NC Acupuncture I*, a party's failure to exhaust administrative remedies reveals a lack of subject matter jurisdiction, and the plaintiff bears the burden of proving that jurisdiction exists. *N.C. Acupuncture I*, 2016 NCBC LEXIS 33, at *9; *see also Frazier v. N.C. Cent. Univ.*, 779 S.E.2d 515, 518 (N.C. Ct. App. 2015). The doctrine clearly applies to limit a plaintiff who seeks judicial relief from an agency action prior to exhausting its administrative remedies. *Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979) ("[W]here the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had *to the courts*.") (emphasis added). The Court cannot apply the failure to exhaust administrative remedies doctrine to the Physical Therapy Board here, however, because the Physical Therapy Board is not seeking any relief from the Court in this action and thus is not seeking to invoke this Court's subject matter jurisdiction. *See, e.g., Neuse River Found. v. Smithfield Foods, Inc.*, 155 N.C. App.

110, 113, 574 S.E.2d 48, 51 (2002) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)) ("As the party invoking jurisdiction, plaintiffs have the burden of proving the elements of standing.").

### 3. Requirement to Pursue Rulemaking

28.    As an additional argument, the Acupuncture Board contends that the Declaratory Ruling erred in reaching an opinion contrary to the Rules Review Commission's objection because the Physical Therapy Board can only act on the issue of dry needling through formal rulemaking.  (Pl.'s Br. Supp. Pet. Judicial Review 10; Pet. Judicial Review 13.)  The North Carolina Administrative Procedure Act requires that agencies pursue formal rulemaking when they "seek to implement or enforce against any person a policy, guideline, or other interpretive statement that meets the definition of a rule contained in [section] 150B-2(8a)."  N.C. Gen. Stat. § 150B-18.  The definition of a rule is "any agency regulation, standard, or statement of general applicability that implements or interprets an enactment of the General Assembly or Congress or a regulation adopted by a federal agency or that describes the procedure or practice requirements of an agency."  N.C. Gen. Stat. § 150B-2(8a).

29.    As an initial matter, the Court notes that the Administrative Procedure Act includes an exemption for "[s]tatements of agency policy made in the context of another proceeding, including . . . [d]eclaratory rulings under [section] 150B-4."  N.C. Gen. Stat. § 150B-2(8a)(e)(1).  Therefore, the Declaratory Ruling itself, which the Acupuncture Board requested, cannot be an improper attempt to circumvent rulemaking requirements.

30.    Nevertheless, because the Declaratory Ruling includes a conclusion that the Revised Position Statement is correct, the Court will address the question of whether the Physical Therapy Board's issuance of the Revised Position Statement is an improper attempt to avoid the rulemaking requirements of the Administrative Procedure Act.  The Physical Therapy Board argues that it had the authority to issue the Revised Position Statement because it falls within a specific exemption from the rulemaking requirements for "[n]onbinding interpretive statements within the delegated authority of an agency that merely define, interpret, or explain the meaning of a statute or rule."  N.C. Gen. Stat. § 150B-2(8a)(c).

31.    In a broad example of this exception, the Court of Appeals has held that the North Carolina Department of Labor's Operations Manual setting forth standards for compliance with the state's OSHA statute is a "nonbinding interpretive statement" exempt from the more stringent standards of rulemaking.  *Comm'r of Labor v. Weekley Homes, L.P.*, 169 N.C. App. 17, 30, 609 S.E.2d 407, 416 (2005).  The court concluded in *Weekley Homes* that the Operations Manual was a nonbinding interpretive statement because the agency had a statutory mandate to protect the health and safety of all employees in the state, and the Operations Manual was "merely an interpretive guideline as to who can be cited [for OSHA violations] and does not require additional evidence or a more stringent standard of proof."  *Id*. at 30, 609 S.E.2d at 417.

32.    Rules, in contrast, "fill the interstices of statutes.  They go beyond mere interpretation of statutory language or application of such language and within

statutory limits set down additional substantive requirements." *Comm'r of Ins. v. N.C. Rate Bureau*, 300 N.C. 381, 411, 269 S.E.2d 547, 568 (1980), *overruled on other grounds by In re Redmond*, 797 S.E.2d 275, 280 (N.C. 2017); *see also Mt. States Health Alliance v. Burwell*, 128 F. Supp. 3d 195, 205 (D.D.C. 2015) ("Legislative rules are those that grant rights, impose obligations, or produce other significant effects on private interests. In contrast, interpretive rules clarify a statutory or regulatory term, remind parties of existing statutory or regulatory duties, or merely track preexisting requirements and explain something the statute or regulation already required.") (internal citations and punctuation omitted).

33. For example, the Court of Appeals has held that an agency policy requiring certain Medicaid applicants to present written evidence in support of their applications fell within the definition of a "rule" because the policy created "a binding standard which interprets the eligibility provisions of the . . . law and, in addition, describes the procedure and evidentiary requirements utilized by respondent agency in determining such eligibility." *Dillingham v. N.C. Dep't of Human Res.*, 132 N.C. App. 704, 710, 513 S.E.2d 823, 827 (1999) (citing *Comr. of Ins. V. Rate Bureau*, 300 N.C. 381, 411, 269 S.E.2d 547, 568 (1980)).

34. Here, the Revised Position Statement limits itself to stating the Physical Therapy Board's interpretation of its own enabling statutes and existing regulations. The Revised Position Statement does not set forth standards or policies for the practice of dry needling by physical therapists. Instead, it restates the Physical Therapy Board's view that dry needling falls within the statutory definition of

physical therapy, it affirms that there are no specific regulations in place, and it advises that physical therapists who desire to perform dry needling must comply with 21 NCAC 48C.0101(a), which is the agency's most basic regulation on what practices are permitted for physical therapists. (R. at 239.)

35. The Revised Position Statement is nonspecific and does not purport to be a "statement of general applicability . . . that describes the procedure and practice requirements of an agency." Its apparent purpose is merely to "define, interpret, or explain" the meaning of the statutes and rules administered by the Physical Therapy Board. As such, the Court concludes that the Revised Position Statement falls within the exception for "nonbinding interpretive statements." *See also Okale v. N.C. Dep't. of Health & Human Servs.,* 153 N.C. App. 475, 478–79, 570 S.E.2d 741, 743 (2002) (holding that the North Carolina Family and Children's Medicaid Manual is a "nonbinding statement from the agency which defines, interprets, and explains the statutes and rules for Medicaid").

36. Indeed, agencies in other states have followed similar informal rulemaking procedures in deciding whether dry needling falls within the scope of physical therapy. *See Iowa Ass'n of Oriental Med. and Acupuncture v. Iowa Bd. of Physical and Occupational Therapy*, No. CVCV 051242, slip op. at 4–5 (Iowa Dist. Ct. Polk Cnty. Oct. 8, 2016) (Ruling on Petition for Judicial Review affirming agency's declaratory order determining that dry needling fell within the scope of the statutory definition of physical therapy); Ky. Op. Att'y Gen., No. OAG 13-010, 2013 Ky. AG LEXIS 145 (Sept. 3, 2013) (Attorney General Opinion upholding agency's declaratory

ruling that dry needling fell within the scope of the statutory definition of physical therapy).

37. Accordingly, for the foregoing reasons, the Court rejects the Acupuncture Board's contention that the Physical Therapy Board issued the Revised Position Statement in violation of rulemaking requirements.

B. The Physical Therapy Statute

38. The Acupuncture Board next challenges the Physical Therapy Board's conclusion that dry needling satisfies the statutory definition of physical therapy. The Acupuncture Board challenges the Physical Therapy Board's legal conclusions as made in excess of the Physical Therapy Board's statutory authority, (Pl.'s Br. Supp. Pet. Judicial Review 11), so the Court reviews this argument *de novo*. *See* N.C. Gen. Stat. § 150B-51(b)(2). The Acupuncture Board does not argue that the Physical Therapy Board's factual findings were not supported by substantial competent evidence. The Physical Therapy Board's factual findings are therefore not at issue and are binding on this Court in its *de novo* review. *Carroll*, 358 N.C. at 663, 599 S.E.2d at 897.

39. As noted above, the Court's *de novo* review of the Declaratory Ruling's legal conclusions means that the Court "considers the matter anew and freely substitutes its own judgment for the agency's." *Carroll*, 358 N.C. at 660, 599 S.E.2d at 895. The Physical Therapy Board nevertheless contends that the Court should defer to the Board's interpretation of the Physical Therapy Practice Act, N.C. Gen. Stat. §§ 90-270.24 *et al.*, (Def.'s Resp. Opp. Pet. 17), relying on the rule that courts "give great

weight to an agency's interpretation of a statute it is charged with administering." *High Rock Lake Partners, LLC v. N.C. Dep't of Transp.*, 366 N.C. 315, 319, 735 S.E.2d 300, 303 (2012).

40. The Court of Appeals has addressed this precise issue where, as here, a court is employing *de novo* review of a statute that "instructs a state agency to promulgate regulations to administer it"[3] and determined that, in such situations, "an additional layer of review is required." *Total Renal Care of N.C., LLC v. N.C. Dep't of Health and Human Servs.*, 776 S.E.2d 322, 326 (N.C. App. 2015). In particular, the Court of Appeals has directed that:

> If the statutory language is unambiguous and the statutory intent clear, this Court must give effect to that unambiguous language regardless of the agency's interpretation. *AH N.C. Owner LLC v. N.C. Dep't of Health & Human Servs.*, __ N.C. App. __, 771 S.E.2d 537, 549 (2015). But if the statute is silent or ambiguous on an issue, this Court must defer to the agency's interpretation "as long as the agency's interpretation is reasonable and based on a permissible construction of the statute." *Id.* at __, 771 S.E.2d at 543.

*Id.* This approach is supported by longstanding precedent from the Supreme Court of North Carolina. *In re Appeal of N.C. Sav. & Loan League*, 302 N.C. 458, 465–66, 276 S.E.2d 404, 410 (1981) (holding that, even when employing *de novo* review, courts should accord some deference to the interpretation of a statute by an agency created to administer that statute).

41. Under North Carolina law, physical therapy means:

> the evaluation or treatment of any person by the use of physical, chemical, or other properties of heat, light, water, electricity, sound,

---

[3] The Physical Therapy Practice Act empowers the Physical Therapy Board to adopt regulations to administer the Act, N.C. Gen. Stat. § 90-270.26(8) and instructs that the Physical Therapy Board's powers "are to be liberally construed," N.C. Gen. Stat. § 90-270.26.

massage, or therapeutic exercise, or other rehabilitative procedures, with or without assistive devices, for the purposes of preventing, correcting, or alleviating a physical or mental disability. . . . Evaluation and treatment of patients may involve physical measures, methods, or procedures as are found commensurate with physical therapy education and training and generally or specifically authorized by regulations of the Board. Physical therapy education and training shall include study of the skeletal manifestations of systemic disease. Physical therapy does not include the application of roentgen rays or radioactive materials, surgery, manipulation of the spine unless prescribed by a physician licensed to practice medicine in North Carolina, or medical diagnosis of disease.

N.C. Gen. Stat. § 90-270.24(4). The statutory definition of physical therapy is silent regarding dry needling. Thus, the Court must defer to the Physical Therapy Board's interpretation of its own statute, so long as the Board's interpretation is reasonable and based on a permissible construction of the statute. *Total Renal Care*, 776 S.E.2d at 326.

42. The Declaratory Ruling holds that dry needling falls within the statutory definition of physical therapy because it is "a treatment that uses physical or rehabilitative procedures, with assistive devices, for the purpose of correcting or alleviating myofascial pain, a physical disability." (Declaratory Ruling 20–21.) The Acupuncture Board contends that this conclusion is fundamentally flawed and should be reversed.

1. "Rehabilitative Procedures"

43. The Acupuncture Board argues that basic rules of statutory construction require reading "other rehabilitative procedures" in section 90-270.24(4) to describe only non-invasive acts because only non-invasive acts immediately precede that phrase in the statute. Stated differently, the Acupuncture Board argues that the

Court should follow the rule that "the meaning of a doubtful word may be ascertained by reference to the meaning of words with which it is associated," *Gardner v. City of Reidsville*, 269 N.C. 581, 591, 153 S.E.2d 139, 148 (1967) (citation omitted), and that, under that rule, dry needling, which involves the insertion of solid filament needles through the skin, necessarily falls outside the statutory definition of physical therapy.

44.     The Court disagrees, however, for several reasons. First, it appears from the uncontested factual findings in the Declaratory Ruling that physical therapists have long been permitted to insert needles into the body for the purpose of performing electromyography studies, which assess electrical activity in muscles. (Declaratory Ruling 22.) The Attorney General's Advisory Letter also relied on this fact as evidence that "insertion of needles by physical therapists does not appear to be prohibited in all circumstances." (R. at 267.) The Court concludes that this fact demonstrates that the Physical Therapy Board has reasonably concluded that the phrase "other rehabilitative procedures" can include the insertion of needles. *AH N.C. Owner LLC v. N.C. Dep't of Health and Human Servs.*, 240 N.C. App. 92, 111, 771 S.E.2d 537, 548 (2015) (holding that an agency's consistent interpretation of a statute is particularly worthy of deference).

45.     The Court further concludes that under basic rules of statutory construction alone, the phrase "other rehabilitative procedures" can include dry needling. In particular, the structure of the statute does not suggest that "other rehabilitative procedures" categorically exclude all invasive procedures. While the Acupuncture

Board is correct that the phrases preceding "other rehabilitative procedures" do not expressly embrace invasive procedures, later language in the statutory definition explicitly exempts "surgery"—undeniably an invasive procedure—from the scope of physical therapy. Reading "other rehabilitative procedures" to exclude any and all invasive procedures from the scope of physical therapy would thus render the express exclusion for "surgery" meaningless, and the law presumes that statutes do not contain redundancies. *Domestic Elec. Serv., Inc. v. City of Rocky Mt.*, 285 N.C. 135, 143, 203 S.E.2d 838, 843 (1974) ("The presumption is that no part of a statute is mere surplusage, but each provision adds something which would not otherwise be included in its terms.").

46. For each of these reasons, therefore, the Court concludes that the phrase "other rehabilitative procedures" under the Physical Therapy Practice Act can include dry needling.

2. "Assistive Devices"

47. The Acupuncture Board additionally challenges the Declaratory Ruling's conclusion that the solid filament needles used in dry needling are "assistive devices" as that term is used in the statute. The Declaratory Ruling determined that the needles used for dry needling fall comfortably within the range of assistive devices used by physical therapists, which include "ultrasound equipment, crutches, wheelchairs, and the tools involved in instrument-assisted soft-tissue mobilization." (Declaratory Ruling 22.) The Declaratory Ruling also relied upon similar conclusions from other states' attorneys general around the United States. Ky. Op. Att'y Gen.,

2013 Ky. AG LEXIS 145, at \*14 (finding that the term "assistive devices" in Kentucky's physical therapy statute could include needles); 95 Op. Att'y Gen. Md. 138, 2010 Md. AG LEXIS 9, at \*17–18 (Aug. 17, 2010) (concluding that Maryland's Physical Therapy Board could interpret the term "mechanical device" to include needles for dry needling); Miss. Op. Att'y Gen., No. 2012-00428, 2012 Miss. AG LEXIS 253, at \*9 (Sept. 10, 2012) (adopting the Maryland Attorney General Opinion's conclusions regarding the term "mechanical devices").

48. The Acupuncture Board argues that categorizing needles as "assistive devices" improperly expands the meaning of that term beyond wheelchairs, crutches, and other "typical" assistive devices used by physical therapists. (Pl.'s Br. Supp. Pet. Judicial Review 14.) The Physical Therapy Practice Act does not define the term "assistive devices," and, as previously discussed, physical therapists in North Carolina already have the ability to use needles to perform electromyography studies, (Declaratory Ruling 22; R. at 267). The Court thus concludes that the Declaratory Ruling does not unduly enlarge the scope of the phrase "assistive devices" as used in the Physical Therapy Practice Act.

49. The Acupuncture Board further argues that the needles used in dry needling cannot be considered an "assistive device" because they are a medical device regulated by the FDA and available only for use by authorized practitioners of acupuncture.[4] (Pl.'s Br. Supp. Pet. Judicial Review 14; Petition Judicial Review

---

[4] The Physical Therapy Board has not challenged, in briefing or at the hearing, the Acupuncture Board's contention that dry needling and acupuncture employ the same solid filament needles.

¶¶ 16–20.) In particular, the Acupuncture Board contends that the needles used in dry needling "must carry a specific FDA warning as required under 21 CFR § 880.109(b)(1), stating 'Caution: Federal law restricts this device to sale by or on the order of a [*qualified practitioner of acupuncture* licensed by the law of the State in which he practices to use or order the use of the device.]'" (Petition ¶ 19) (brackets and emphasis in original).

50. The Petition takes glaring liberties with the cited regulation, however. The full text of the regulation requires medical devices, such as the solid filament needles at issue here, to include a label bearing:

> The symbol statement "RX only" or "℞ only" or the statement "Caution: Federal law restricts this device to sale by or on the order of a ____", the blank to be filled with the word "physician", "dentist", "veterinarian", or with the descriptive designation of any other practitioner licensed by the law of the State in which the practitioner practices to use or order the use of the device[.]

21 C.F.R. § 801.109(b)(1). As such, the cited regulation does not support the Acupuncture Board's argument that the needles used in dry needling are "medical devices" only for use by acupuncturists. Indeed, under a plain reading of the regulation, acupuncture needles could be sold legally with a label stating "RX only" by any practitioner licensed to use or order the use of such needles. The Acupuncture Board's position assumes that acupuncturists are the only practitioners so licensed, but the cited regulation does not go so far.

51. Finally, the Acupuncture Board challenged the identification of solid filament needles as "assistive devices" because of the Declaratory Ruling's conclusion that dry needling is a "rehabilitative procedure with an assistive device." However,

as a matter of statutory construction, the Court concludes that whether or not solid filament needles are "assistive devices" is not determinative of whether dry needling falls within the scope of physical therapy.

52.     The statute defines the scope of physical therapy as including "other rehabilitative procedures, with *or without* assistive devices, . . . " N.C. Gen. Stat. § 90-270.24(4) (emphasis added).  The phrase "with or without" regularly appears in North Carolina's General Statutes.  *See, e.g.*, N.C. Gen. Stat. § 168A-3 (defining a "qualified person with a disability" as "a person with a disability who can satisfactorily perform the duties of the job in question, with or without reasonable accommodation"); N.C. Gen. Stat. § 55A-15-01(b)(3) (describing permitted practices for foreign corporations, including "[m]aintaining bank accounts or borrowing money in this State, with or without security"); N.C. Gen. Stat. § 55-8-08(a) (stating that "shareholders may remove one or more directors with or without cause unless the articles of incorporation provide that directors may be removed only for cause"); N.C. Gen. Stat. § 15A-501 (describing the duties of a law-enforcement officer "[u]pon the arrest of a person, with or without a warrant").  These repeated and varying occurrences show that the phrase "with or without" as used here clearly and unambiguously identifies two equally available alternatives.  *Burgess*, 326 N.C. at 209, 388 S.E.2d at 136 (holding that where statutory language is clear and unambiguous, the Court must apply the plain meaning of the statute).

53.     Indeed, while the Declaratory Ruling concluded that solid filament needles are an "assistive device," the phrase "with or without" indicates that a procedure does

not need to employ an assistive device to fall within the scope of the statute, so long as a procedure qualifies as an "other rehabilitative procedure." Here, the Court has already concluded that dry needling can fall within the statutory definition of physical therapy as an "other rehabilitative procedure," and so whether or not solid filament needles are an "assistive device" is not determinative of the issue.

54. Therefore, based on the foregoing, the Court finds the Acupuncture Board's arguments without merit and concludes that (i) the Physical Therapy Board has reasonably interpreted the term "assistive devices" in the Physical Therapy Practice Act to include solid filament needles used for dry needling, and (ii) the scope of physical therapy can include dry needling regardless of whether solid filament needles qualify as assistive devices under the statute.

### 3. "Commensurate with Physical Therapy Education and Training"

55. The Declaratory Ruling contained a conclusion that health care professions have dynamic scopes of practice. (Declaratory Ruling 28.) The statutory definition of physical therapy contemplates that the scope of practice will evolve to include "physical measures, methods, or procedures as are found commensurate with physical therapy education and training and generally or specifically authorized by regulations of the Board." N.C. Gen. Stat. § 90-270.24(4). Pursuant to this statutory authority, the Physical Therapy Board has adopted a regulation stating that "[p]hysical therapy is presumed to include any acts, tests, procedures, modalities, treatments, or interventions that are routinely taught in educational programs or in continuing education programs for physical therapists and are routinely performed

in practice settings." 21 N.C.A.C. 48C .0101(a). Therefore, the Physical Therapy Practice Act and the regulations enforcing the act embrace the view that the scope of physical therapy can evolve, and the Physical Therapy Board relied on this aspect of the statutory definition of physical therapy to conclude that dry needling fell within its scope of practice.

56. The Acupuncture Board did not challenge this aspect of the Declaratory Ruling. The Court nevertheless considers it worthwhile to evaluate the Physical Therapy Board's factual findings and conclusions of law construing this part of its statute since the Court is determining whether the Physical Therapy Board's interpretation of its own statute merits deference.

57. The Physical Therapy Board set forth specific findings of fact in the Declaratory Ruling supporting its conclusion that dry needling is regularly taught and practiced by physical therapists. The Physical Therapy Board concluded that dry needling is regularly taught and practiced because: (i) at least eighty-six percent of the knowledge requirements needed to be competent in dry needling are taught in entry-level physical therapy education; (ii) post-graduate and continuing education courses are available and provide specific training in dry needling; (iii) as recently as 2014, physical therapists in North Carolina were performing an estimated 500,000 dry needling treatments per year; and (iv) experience in dry needling will accompany physical therapists who relocate to North Carolina from one of the thirty-two states that allows the performance of dry needling by physical therapists. (Declaratory Ruling 25–27.) The Court concludes that these binding facts support a conclusion

that dry needling may be a procedure as is "found commensurate with physical therapy education and training" as set forth in section 90-270.24(4).

58.     For each of these reasons, therefore, the Court concludes that the Physical Therapy Board has reasonably construed its statute to conclude that dry needling falls within the statutory definition of physical therapy.  The Court thus decides that the conclusions in the Declaratory Ruling should not be set aside.

C.  <u>Unargued issues</u>

59.     Throughout this case, the Acupuncture Board's briefs and oral arguments have coalesced around two arguments—that the Declaratory Ruling is the result of unlawful procedure and that the Physical Therapy Board erred in its interpretation of the Physical Therapy Practice Act—which the Court has addressed above.  The Petition lists several other exceptions to the Declaratory Ruling.  These include exceptions to the Physical Therapy Board's policy-based conclusions that North Carolina public policy favors patient choice in health care, and an exception to the Physical Therapy Board's conclusion that the Acupuncture Board's desired ruling would violate the anti-monopoly provision of the North Carolina Constitution.

60.     These exceptions received little to no attention in the Acupuncture's Board's briefs or oral arguments.  For instance, across its two briefs, the Acupuncture Board devoted but a single sentence in the last page of its reply brief arguing that a ruling in its favor would not violate the anti-monopoly provision of the North Carolina Constitution.  (Pl.'s Reply Br. Supp. Pet. Judicial Review 12.)  The Court concludes that these issues have not been sufficiently presented for review and therefore does

not consider these unargued exceptions. *See Foster v. Crandell*, 181 N.C. App. 152, 173, 638 S.E.2d 526, 540 (2007) ("It is not the responsibility of this Court to construct arguments for a party."); *Larsen v. Black Diamond French Truffles, Inc.*, 241 N.C. App. 74, 79, 772 S.E.2d 93, 96 (2015) (holding, under the Rules of Appellate Procedure, that a party has abandoned issues not raised in its principal brief).

## IV.

## CONCLUSION

61. For the reasons stated above, the Court **AFFIRMS** the Physical Therapy Board's Declaratory Ruling.[5]

**SO ORDERED**, this the 2nd day of August, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
  for Complex Business Cases

---

[5] Despite its ruling, the Court is sensitive to the Acupuncture Board's view that the legal status of dry needling by physical therapists is currently in an unusual status—i.e., that the Physical Therapy Board currently believes that it has the authority to determine that physical therapists may practice dry needling, although the Board lacks the statutory authority to establish training standards for physical therapists to perform dry needling based on the Rules Review Commission's objection. (Pl.'s Pet. Judicial Review 9.) It appears to the Court that this seeming inconsistency could potentially be resolved through the Physical Therapy Board's further pursuit of formal rulemaking or, alternatively, through legislative action. Indeed, over the last decade, a handful of state legislatures have amended their statutes to address explicitly whether dry needling is within the scope of physical therapy. *See* Ariz. Rev. Stat. § 32-2001(4) (defining dry needling as within the scope of physical therapy); Del. Code Ann. tit. 24, § 2602(10)(a)(2) (same); Ga. Code Ann. § 43-33-3(7)(D) (same); Kan. Stat. Ann. § 65-2901(a) (same); Tenn. Code Ann. § 63-13-103(16)(B) (same); Utah Code Ann. § 58-24b-505 (same).